**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Winkler,<br><br>   Plaintiff,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>   Defendants. | No. CV-15-01786-PHX-DLR<br><br>**ORDER** |

Plaintiff Martha Winkler alleges that Defendant Jason Gillespie, a police officer with Defendant the City of Phoenix ("City"), used excessive force to unlawfully arrest her in violation of her Fourth Amendment rights. Before the Court is Defendants' summary judgment motion, which is fully briefed. (Docs. 68, 74, 79.) For the following reasons, Defendants' motion is granted in part and denied in part.

## **BACKGROUND**[1]

In July 2014, Winkler got into a dispute with Circle K employees over the purchase of a lottery ticket. Winkler called the Phoenix Police Department several times to report being harassed by the Circle K staff. A Circle K employee likewise contacted the police to report that Winkler was harassing customers and refusing to leave.

Nearly an hour after Winkler's initial call, Officer Gillespie arrived at the Circle

---

[1] Winkler raises a number of hearsay objections to evidence offered by Defendants in support of their separate statement of facts. (Doc. 75.) These objections are overruled. *See e.g.*, Fed. R. Evid. 801(d)(2); 803(4); 803(8)(A)(ii), (iii).

K. He asked Winkler what she wanted, and Winkler demanded to speak with his supervisor. Officer Gillespie then entered the store, where an employee identified Winkler and reported that she was trespassing.[2] Officer Gillespie did not ask what happened between the employees and Winkler or whether they already informed Winkler that she was trespassing and needed to leave. Instead, Officer Gillespie returned to the parking lot and informed Winkler that she was trespassing and needed to leave immediately.

When Winkler failed to leave, Officer Gillespie asked for her identification. Winkler was on the phone during this time, but Officer Gillespie interpreted her non-responsiveness as a refusal to comply with his orders and decided to arrest her. While handcuffing Winkler, Officer Gillespie employed a straight-arm takedown, causing her to fall to the ground and strike her head. Officer Gillespie then called for emergency services. The entire encounter, from the time Officer Gillespie arrived on the scene to the time he called for emergency services, lasted roughly three minutes.

## **LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing

---

[2] The parties use the phrase "wanted [Winkler] trespassed," which grammatically is confusing. (*See, e.g.*, Docs. 12 ¶ 32; 69 ¶ 14; 69-2 at 54:23-24; 75 PSSOF ¶¶ 8, 35.) Trespassing typically is an act done *by* a trespasser, not something done *to* her. Because no one defines this phrase as it has been used, and it is not otherwise clear what is meant by it. That is, the Court does not know whether store employees requested that Officer Gillespie arrest, cite, or remove Winkler for trespassing, or whether they simply reported that they considered Winkler to be a trespasser. (A cursory Google search yielded some enlightening results. *See* Neal Whitman, *Trespassers Will Be Trespassed* (2013), *available at* https://www.visualthesaurus.com/cm/dictionary/trespassers-will-be-trespassed/.) Because at this stage the Court must view the facts in the light most favorable to Winkler, the Court assumes that the Circle K employees merely reported to Officer Gillespie that they considered Winkler to be a trespasser, and did not request or demand that Officer Gillespie take any particular action against her.

evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

## **PRELIMINARY ISSUES**

Before addressing the merits of Defendants' summary judgment motion, the Court first discusses some preliminary issues touching on the evidentiary basis for Winkler's opposition motion. Specifically, Defendants' (1) motion to strike Winkler's declaration for purposes of this motion and (2) request that the Court treat their facts as undisputed because Winkler's controverting statement of facts does not comply with Local Rule of Civil Procedure 56.1.

**I. Motion to Strike Winkler's Declaration**

Winkler submitted a sworn declaration with her response memorandum detailing her personal account of the incident, and relies in part on that declaration to establish the existence of material factual disputes. (Doc. 75-1.) Defendants argue that the Court should strike Winkler's declaration because it (1) was not timely disclosed, (2) is plainly contradicted by her own disclosures and the surveillance video of the incident, and (3) is self-serving, conclusory, and lacks foundation.

Motions to strike are generally disfavored and rarely granted. *XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, No. CV-08-1467-PHX-ROS, 2009 WL 2382998, at *1 (D. Ariz. Aug. 4, 2009); *Ordahl v. U.S.*, 646 F. Supp. 4, 6 (D. Mont. 1985).

> A motion to strike may be filed only if it is authorized by statute or rule, such as Federal Rule of Civil Procedure 12(f), 26(g)(2), or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order.

LRCiv 7.2(m).

### A. Disclosure

Federal Rule of Civil Procedure 26(e) requires parties to supplement their disclosures "in a timely manner if the party learns that in a material respect the disclosure is incomplete or incorrect." This responsibility to supplement applies regardless of whether the opposing party seeks additional disclosure. Moreover, the duty to supplement discovery responses is ongoing, and failure to do so can result in the exclusion of untimely disclosed information. *See* Fed. R. Civ. P. 37(c).

Winkler disclosed her declaration, which details her personal account of the incident, on June 16, 2017, two months after the close of fact discovery and in conjunction with her response to Defendants' summary judgment motion. (Docs. 37, 53; 75-1.) Defendants argue that the declaration and the information contained within it were withheld despite its apparent responsiveness to Defendants' discovery requests.

For example, on December 28, 2015, Defendants requested that Winkler produce "all recordings, videos, statements, and notes made by [her] . . . relating to the lawsuit." (Doc. 79-1.) To the extent Defendants contend that Winkler should have reduced her anticipated trial testimony to a written declaration back in December 2015 in order to respond to Defendants' request for production ("RFP"), the argument is not well-taken. RFPs are used to obtain documents, electronically stored information, and other tangible things. Fed. R. Civ. P. 34. In responding to a RFP, a party typically is not required to create documents that do not otherwise exist. Here, Winkler's declaration did

not exist when Defendants' served their RFP, nor is it apparent why it would or should have been created at that time. Indeed, the need for such a declaration would not naturally arise unless a defendant moves for summary judgment without having first deposed the plaintiff.

Similarly, Defendants served Winkler with interrogatories that asked her to "[i]dentify with particularity any facts and evidence in support of" her claims. (Doc. 79-2.) Winkler responded that she had "disclosed the [] requested information within [her] 26.1 [d]isclosure statement." (Doc. 79 at 4.) Defendants argue that the information contained within the declaration is responsive to the interrogatory and should have been disclosed, yet they fail to offer specific examples of how the declaration materially differs from Winkler's 26.1 disclosure.

Moreover, contrary to Defendants' argument, the allegations in Winkler's complaint are consistent with the statements made in her declaration. For example, Defendants claim that a number of statements from Winkler's declaration are found nowhere else in the record, including: (1) Winkler was not belligerent; (2) the store employees mishandled the situation; (3) Officer Gillespie had an angry demeanor towards Winkler upon his arrival on scene; and (4) Winkler was cooperative and provided Officer Gillespie with identification. (Doc. 79 at 4-6.) But Winkler's complaint alleges that: (1) she "never raised her voice;" (2) that the "store clerk incorrectly took" her lottery ticket order; (3) upon Officer Gillespie's arrival, he seemed "irritated and loudly shouted at" Winkler; and (4) that "Officer Gillespie asked for [Winkler's] identification [and] she complied." (Doc. 12 ¶¶ 10-13.) Considering Winkler's declaration offers substantially the same information as her complaint, it is disingenuous for Defendants to now claim that they were unaware of Winkler's version of events and would have deposed her had they only known earlier. Defendants' untimely disclosure argument is unconvincing.

**B. Inconsistency with Other Evidence**

Next, Defendants argue that Winkler's declaration should be stricken because it is inconsistent "with the evidence she herself disclosed and" and that it is wholly contradicted by Circle K's surveillance video. (Doc. 79 at 4-6.) The Court disagrees. Again, Defendants do not direct the Court to specific examples of inconsistencies. Additionally, the Court has reviewed the surveillance footage and finds that it does not utterly discredit Winkler's account of events. Indeed, the video offers only limited insight into what occurred because much of the interaction between Winkler and Officer Gillespie takes place off-camera or is partially obstructed by a parked vehicle.

### C. Foundation

Finally, Defendants assert that statements contained within Winkler's declaration are made without proper foundation. (*Id.* at 5.) Under Federal Rule 56(c)(4), a declaration used to support or oppose a motion "must be made with personal knowledge, set out facts that would be admissible in evidence, and show that the [] declarant is competent to testify on the matters stated." After reviewing Winkler's declaration, it is apparent that the non-conclusory statements concern her personal interactions with store employees, Officer Gillespie, and medical personnel, topics of which she has personal knowledge. Defendants' motion to strike therefore is denied.

## II. Compliance with LRCiv 56.1

This District's Local Rules of Practice impose specific requirements on the form and content of summary judgment motions. "Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Each of these facts "must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Likewise:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth:
>
> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph

> indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and
>
> (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b).

The rule distinguishes between a separate statement of facts and a memorandum of law because the two documents serve different purposes. The court should be able to glean which facts, if any, are genuinely disputed by reviewing the parties' separate and controverting statements of facts. Working from that baseline of facts, the court then looks to the parties' memoranda of law to determine whether any genuinely disputed matters are material under governing law, or whether the movant is entitled to judgment as a matter of law. Thus, factual disputes should be aired in the parties' separate statements, while legal disputes should be addressed in their memoranda of law. *See McClure v. Country Life Ins. Co.*, No. 15-CV-02579-PHX-DLR, 2017 WL 3268841, at *2 (D. Ariz. Aug. 1, 2017). The court may deem a movant's separate statement of facts to be true if the nonmoving party does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x. 734, 735 (9th Cir. 2010).

Defendants argue that many paragraphs in Winkler's controverting statement of facts violate LRCiv 56.1 because they fail to reference specific, admissible portions of the record establishing a genuine factual dispute or identify with particularity which facts are controverted.[3] (Doc. 79 at 2; Doc. 75 PCSOF ¶¶ 1-10, 12-14, 16-21, 24-27, 29.) At the outset, the Court customarily disregards factual statements not supported by citations to the record, and does not consider arguments or conclusions made within either party's

---

[3] Winkler's statement of facts includes both a controverting statement of facts ("PCSOF") and separate statement of facts ("PSSOF") which are independently numbered. (Doc. 75.) For ease of reference, the Court will specify whether it is citing to PCSOF or PSSOF.

- 7 -

separate statement of facts. To the extent certain paragraphs of Winkler's separate controverting statement of facts fall into these categories, those paragraphs have not been considered for purposes of this order.

With that said, a number of Defendants' specific objections are not well-taken. Defendants complain that Winkler partially objects "to facts that are undisputed," but the need for partial objections was created by Defendants' own failure to comply with LRCiv 56.1(a), which requires each material fact be set forth in a "separately numbered paragraph." For example, in a single paragraph Defendants state that upon Officer Gillespie's arrival (1) Winkler "approached him, appearing irate;" (2) he asked what she wanted, to which she responded she wanted to speak to his supervisor; and (3) "[s]ensing that he wasn't going to get anywhere with [Winkler]," he proceeded into the store. (Doc. 69 ¶ 13.) In response, Winkler partially disputes the fact, but notes that she "does not dispute that [she] asked for a supervisor, and that Officer Gillespie spent little with [her] before going into the store." (Doc. 75 PCSOF ¶ 13.) Thus, where Winkler partially disputes Defendants' statements of fact, she specifies the way in which the fact is disputed. (*See, e.g.*, *Id.* ¶ 8.) Additionally, to the extent that Defendant's admissibility objections are based on Winkler's reliance on her own declaration, the objection is overruled for the reasons discussed above.

## **DISCUSSION**

Winkler asserts claims under 42 U.S.C. § 1983 against Officer Gillespie and the City, as well as a state law gross negligence claim against the City under a vicarious liability theory. Defendants move for summary judgment on all counts.

**I. Claims Against Officer Gillespie (Counts III & IV)**

Section 1983 provides a cause of action for persons who have been deprived of their constitutional rights by persons acting under color of law. It is a mechanism "for vindicating federal rights elsewhere conferred," and "is not itself a source of substantive rights." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal quotations omitted). To succeed on a claim under § 1983, a plaintiff must show "(1) that

a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). Winkler alleges that Officer Gillespie violated her Fourth and Fourteenth Amendment rights by falsely arresting her and using excessive force.

### A. False Arrest

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. The reasonableness of an arrest depends on the existence of probable cause. *U.S. v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989); *see also Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (a false arrest is one effectuated without probable cause). Probable cause to arrest exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The existence of probable cause is "generally a question for the jury" because such determinations are highly dependent on the facts and circumstances. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1989). Summary judgment is proper, however, if no reasonable jury could find that the officer lacked probable cause to arrest. *Id.*

Defendants contend that Officer Gillespie had probable cause to arrest Winkler for criminal trespass, which requires "knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner or any other person having lawful control over such property." A.R.S. § 13-1502(A)(1). Defendants also argue that, pursuant to the City's Operations Order 4.10 and 6.2, Winkler was not eligible for cite-and-release because she failed to provide him with proper identification.[4] (Doc. 69 ¶¶ 32-33.)

---

[4] According to Operations Order 4.10, "a person to be arrested for misdemeanor charges only, may be eligible for release . . . after being issued an Arizona Traffic Ticket and Complaint (ATTC)." (Doc. 69-5 at 20). Moreover, according to Operations Order 6.2 "[i]ssuing an ATTC as a citation in lieu of detention (CLD) should be strongly considered when the elements of a lawful misdemeanor arrest are present." (Doc. 69-6 at

Having reviewed the parties' briefs and the evidence cited therein, the Court finds that genuine factual disputes preclude summary judgment. For example, Winkler asserted that neither Officer Gillespie nor the store employees instructed her to leave the property or informed her that she was trespassing. (Doc. 75 PCSOF ¶¶ 6,8, 14.) In contrast, a store employee testified that he "warned" Winkler about trespassing. (Doc. 75 PSSOF ¶ 40.) For his part, Officer Gillespie could not remember whether he instructed Winkler to leave the property or simply not to reenter the store. (¶ 35.) He also acknowledged that he might not have had Winkler's attention because she was on the phone, which calls into question whether a reasonable officer in Officer Gillespie's position would have believed that Winkler was knowingly refusing to leave after being asked to do so. (¶¶ 20, 38.) Additionally, in contrast to Defendants' position, Winkler averred that she provided Officer Gillespie with her identification. (¶ 11.) These factual disputes, combined with the fact that Officer Gillespie elected to arrest Winkler after less than a minute of explaining the situation to her (¶ 13), supply enough doubt about the facts and circumstances underlying the arrest to preclude summary judgment on Winkler's § 1983 false arrest claim.

### B. Excessive Force

"Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). The operative question is "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Analyzing a Fourth Amendment excessive force claim requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations

---

9.) An exception to this rule is made where there is a question concerning the validity of the perpetrators identification. (*Id.*)

- 10 -

omitted). Traditionally, this balancing is conducted in three steps. First, a court evaluates "the type and amount of force inflicted." *Espinosa v. City and Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (internal quotations omitted). Second, the court considers the government's interest in using force, relying on factors such as, "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting escape." *Id.* The court then "balance[s] the gravity of the intrusion on the individual against the government's need for that intrusion . . ." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003). "Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *See Chew v. Gates*, 27 F.3d 1432, 1440-41 n.5 (9th Cir. 1994).

It is undisputed that Officer Gillespie used a straight-arm takedown and that Winkler was arrested for misdemeanor trespass. (*See e.g.*, Doc. 69 ¶ 20; Doc. 69-2 at 98:25; 99:1-3, 16-24; Doc. 75 PSSOF ¶ 21.)[5] There are genuine factual disputes about whether Winkler posed an immediate threat to Officer Gillespie or resisted arrest. For example, Officer Gillespie testified that he used the straight-arm takedown because he was concerned about being struck by passing vehicles in the parking lot. Winkler, however, stated that neither she nor Officer Gillespie were in danger of being struck by vehicles in the parking lot because the takedown took place inside a parking stall away from any traffic. (*Compare* Doc. 69 ¶ 17 *with* Doc. 75 PCSOF ¶ 17.) As previously discussed, the surveillance video offers little clarity. Similarly, the evidence of Winkler resisting arrest is ambiguous. For example, Officer Gillespie testified that Winkler tried to pull away when he went to handcuff her. In contrast, Winkler stated that she never resisted arrest because Officer Gillespie never notified her that she was under arrest. (*Compare* Doc. 69 ¶ 19 *with* Doc. 75 PCSOF ¶ 19 *and* Doc. 75 PSSOF ¶¶ 15-18.)

For these reasons, the Court finds that there are outstanding questions of fact

---

[5] Although Defendants question whether the straight-arm takedown caused Winkler's fall, it is undisputed that Officer Gillespie used the maneuver. (Doc. 69 at 11.)

regarding the propriety of the force Officer Gillespie used to arrest Winkler, especially given the relatively minor nature of the infraction for which she was arrested. Defendants' summary judgment motion on this claim is denied.

## II. Claims Against the City (Counts I & II)

### A. Gross Negligence

In Count I, Winkler asserts that the City is grossly negligent under a vicarious liability theory. A party is grossly negligent if it "act[s] when he or she knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Badia v. City of Casa Grande*, 988 P.2d 134, 141-42 (Ariz. Ct. App. 1999) (citation omitted). Under Arizona law, an employer may be held vicariously liable under the doctrine of respondeat superior for the negligent acts of its employee acting within the course and scope of employment. *Baker ex rel. Hall Brake Supply, Inc. v. Steward Title & Trust of Phoenix, Inc.*, 5 P.3d 249, 254 (Ariz. Ct. App. 2000); Restatement (Third) of Agency § 7.07(1) (2006).

Here, it is undisputed that Officer Gillespie is an employee of the Phoenix Police Department and was acting within the course and scope of his employment at the time of the incident. Defendants argue, however, that the City cannot be vicariously liable because Officer Gillespie is immune from civil liability. Arizona law provides police officers immunity from civil liability when their underlying conduct is justified under the state's use of force statutes. *See, e.g.*, A.R.S. §§ 13-409, 13-410. One such statute provides that an officer is justified in using physical force against another in making an arrest if: (1) "[a] reasonable person would believe that such force is immediately necessary to effect the arrest;" (2) "[s]uch person makes known the purpose of the arrest . . . or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested; and (3) "[a] reasonable person would believe the arrest or detention to be lawful." A.R.S. § 13-409. For largely the same reasons that a reasonable jury could find that Officer Gillespie lacked probable cause and used excessive force, it also could

- 12 -

find that he acted with gross negligence. *See Badia*, 988 P.2d at 141 (noting that gross negligence may only be resolved on summary judgment "if no evidence is introduced that would lead a reasonable person to find gross negligence"). Summary judgment on this claim is denied.

### B. Section 1983

In Count II, Winkler raises a § 1983 against the City for its hiring, training, and supervision of Officer Gillespie. (Doc. 12 at 4-5.) "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Stated differently, a municipality cannot be vicariously liable under § 1983 for the actions of its employees, but it can be liable where its own actions cause the constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In order to ensure that a municipality is not held liable solely for the actions of its employees, "rigorous standards of culpability and causation" apply "where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997).

Specifically, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a deliberate policy or custom that caused the plaintiff's injury. *Id.* at 404. A custom exists when a practice, which has not been formally approved by the appropriate decision-makers, is so persistent and widespread as to have the force of law. *Id*; *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (defining custom as a "longstanding practice" which "constitutes the standard operating procedure"). The policy or custom must amount to deliberate indifference to the constitutional rights of individuals the police officers are likely to come into contact with. *See Blankenhorn v. City of Orange,* 485 F.3d 463, 484-85 (9th Cir. 2007).

In support of her claim against the City, Winkler argues that Operations Order 1.5, which provides the rules for use of force by Phoenix police offers, is unconstitutional. According to Winkler, her "injuries were sustained as a result of an officer complying

with Order 1.5," and that the Order "resulted in the violation of [her] Fourth Amendment [r]ights." (Doc. 75 at 12-13.) The Court disagrees.

Order 1.5 states: "Circumstances that may govern the reasonableness of using a particular force option include, but are not limited to: (1) [t]he severity of the crime; (2) [w]hether the suspect poses an immediate threat to the safety of officers or others; [and] (3) [w]hether the suspect is actively resisting arrest or attempting to evade arrest by flight." The order itself is not unconstitutional because its language closely tracks the Fourth Amendment's use of force standards as set out in *Graham*. 490 U.S. at 396-97. The City cannot be held liable under § 1983 for instituting a constitutional use of force policy.

Indeed, on this point Winkler seems to have her argument backward. If Officer Gillespie complied with a policy materially identical to the Fourth Amendment's use of force standards, it necessarily would follow that Officer Gillespie acted constitutionally. Winkler, of course, believes that Officer Gillespie acted unconstitutionally, and the Court has found summary judgment is inappropriate on the constitutional claims against him. If Officer Gillespie violated the constitution in the manner Winkler alleges, then it seems to follow that he would *not* have complied with Order 1.5. Importantly, Winkler has offered no evidence that the City customarily disregards its own policies and the Fourth Amendment's use of force standards. Instead, she relies on her encounter with Officer Gillespie, which is a single incident and not, alone, indicative of a systemic policy or custom of violating people's constitutional rights. For this reason, Defendants' are entitled to summary judgment on Winkler's § 1983 claim against the City.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment on Winkler's § 1983 claim against the City, but denies Defendants' motion with respect to Winkler's gross negligence claim against the City and § 1983 claims against Officer Gillespie.

//

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 68) is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

Dated this 27th day of February, 2018.

_____
Douglas L. Rayes
United States District Judge