Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
Tara B. Zoellner, Bar #027364
WIENEKE LAW GROUP, PLC
1095 West Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
Telephone: (602) 715-1868
Facsimile: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com
Email: tzoellner@wienekelawgroup.com

*Attorneys for Defendants City of Phoenix and
Officer Jason Gillespie*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Martha Winkler, a single woman, | No. 15-cv-01786-PHX-DLR |
| Plaintiff, | **DEFENDANTS' TRIAL MEMORANDUM** |
| v. | |
| City of Phoenix, a public entity, et al., | |
| Defendants. | |

Pursuant to the Court's Trial Setting Order (Dkt. 93), Defendants City of Phoenix and Officer Jason Gillespie submit the following Trial Memorandum, outlining and addressing legal issues anticipated at trial.

# I.    LEGAL ISSUES

### a.    Plaintiff's Fourth Amendment Unreasonable Search and Seizure Claim

#### i.   *Officer Gillespie is entitled to qualified immunity.*

Officer Gillespie is entitled to qualified immunity for his arrest of Plaintiff. Qualified immunity allows for mistaken judgments and protects "all but the plainly incompetent or those who knowingly violate the law." *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003). *See also Brosseau v. Haugan*, 543 U.S. 194, 201 (2004). "The court applies a two-prong analysis to determine whether officials are entitled to qualified immunity: (1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event." *Rosenbaum v. Washoe County*, 663

F.3d 1071, 1075 (9th Cir. 2011) (citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011)). The Court may address these prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Where, as here, an arrest is made with probable cause, it does not violate the Fourth Amendment, and the arresting officer is entitled to qualified immunity. *Rosenbaum*, 663 F.3d at 1076. *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") (*overruled on other grounds by Pearson*, 555 U.S. at 236). Even assuming, however (without conceding), that Officer Gillespie did not have probable cause to arrest Plaintiff, he is still entitled to qualified immunity, as Plaintiff cannot show that Officer Gillespie's actions were unlawful under the particular circumstances. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("The plaintiff bears the burden to show that the contours of the right were clearly established.").

"An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City and County of San Francisco, Calif. v. Sheehan*, 135 S.Ct. 1765, 1774 (2015) (internal citations and quotations omitted). Whether a right is "clearly established" cannot be defined "at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). Rather, "[t]he dispositive question is whether the violative nature of the particular conduct is clearly established." *Id.* (emphasis in original) (internal citations and quotations omitted). Moreover, the United States Supreme Court has suggested (repeatedly) that circuit precedent alone may be insufficient to create the type of "clearly established" precedent necessary to overcome qualified immunity. *See Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015); *Sheehan*, 135 S.Ct. at 1775-76, 78*; Carroll v. Carman*, 135 S.Ct. 348, 350 (2014); *Reichle v. Howards*, 132 S.Ct. 2088, 2094 (2012).

Here, it is not enough to say that Plaintiff has a right to be free from unreasonable searches and seizures. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 2084 (2011) ("The general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). *See also Sheehan*, 135 S.Ct. at 1776 ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."). The proper inquiry is whether, at the time of the arrest, Plaintiff had a clearly established right that prohibited Officer Gillespie from arresting her for trespass based on the statements of two store employees to the officer that she had been asked multiple times to leave the premises but remained on the store property. Because she did not, Officer Gillespie is entitled to qualified immunity.

### ii.  *As to Plaintiff's unlawful search and seizure claim, Officer Gillespie had probable cause to arrest Plaintiff.*

Plaintiff alleges that Officer Gillespie arrested Plaintiff without probable cause. (Dkt. 12, ¶ 31.) "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964-65 (9th Cir. 2001). To determine whether an arrest was lawful under the Fourth Amendment, "[f]ederal law asks only whether the officers had probable cause to believe that the predicate offense, as the state has defined it, has been committed." *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.*; *see also Lacy v. County of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008) ("Probable cause to arrest or detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each."

"Probable cause exists if 'at the moment the arrest was made . . . the facts and circumstances within [the police officer's] knowledge and of which [the police officer] had

reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the arrestee] had violated [the law]." *Bohnert v. Mitchell*, NO. CV-08-2303-PHX-LOA, 2010 U.S. Dist. LEXIS 100324, *33 (D. Ariz. Sept. 21, 2010) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964))). "Probable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense." *Lacy*, 631 F. Supp. 2d at 1194.

The probable cause standard "is not a subjective standard but an objective one." *State v. Vaughn*, 12 Ariz. App. 442, 444 (1970); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004) (rejecting the "closely related" rule and holding that "[s]ubjective intent of the arresting officer . . . is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest."). "Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest." *Lacy*, 631 F. Supp. 2d at 1194 (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)) (remaining citations omitted); *see also Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990).

The Court should find in favor of Officer Gillespie if the officer had probable cause to arrest Plaintiff for *any* offense that could have been charged under the circumstances. *Lacy*, 631 F. Supp. 2d at 1194 (citing *Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) *and Egolf v. Witmer*, 526 F.3d 104, 108 n.8 (3d Cir. 2008) ("probable cause need only exist as to any offense that could be charged under the circumstances")).

Officer Gillespie arrested Plaintiff for trespassing on Circle K property, but had probable cause to arrest her for other crimes, as well. At minimum, he could have arrested her for any of the following:

1. Criminal trespass in the third degree:  Plaintiff committed criminal trespass in the third degree when she stayed on the Circle K premises after Officer Gillespie and the Circle K clerks asked her to leave. *See* A.R.S. § 13-1502(A)(1) ("knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner or any other person having lawful control over such property").

2. Harassment:  Plaintiff harassed[1] the Circle K clerks when her lottery ticket issue was not resolved to her satisfaction. Her behavior, in fact, led them to call the police and request that she be removed from the premises. Moreover, she harassed Circle K customers to the extent that one of them also called the police to report her harassing behavior. A.R.S. § 13-2921(A). This information was included in the Computer Aided Dispatch report sent to Officer Gillespie, as well as reported to him over the radio as he was responding to the call.

3. Disorderly Conduct:  Plaintiff committed disorderly conduct when she continued to disrupt Circle K operations before Officer Gillespie arrived. *See* A.R.S. 13-2904(A)(4) (a person commits disorderly conduct if, "with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person . . . [m]akes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession").

4. Refusing to Provide Truthful Name:  Plaintiff refused to identify herself or provide identification to Officer Gillespie, upon request. In so doing, she violated A.R.S. § 13-2412 ("It is unlawful for a person, after being advised that the person's refusal to answer is unlawful, to fail or refuse to state the person's true full name on request of a peace officer who has lawfully detained the person

---

[1] "Harassment" is "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed, or harassed and the conduct in fact seriously alarms, annoys or harasses the person." A.R.S. § 13-2921(E).

1   based on reasonable suspicion that the person has committed, is committing or is

2   about to commit a crime.").

3   5. Resisting Arrest:  Plaintiff resisted Officer Gillespie's ability to investigate the

4   situation and his attempts to arrest her. In so doing, she violated A.R.S. § 13-

5   2508 ("[a] person commits resisting arrest by intentionally preventing or

6   attempting to prevent a . . . peace officer. . . from effecting an arrest by . . .

7   engaging in passive resistance."[2]). Under Arizona law, resisting arrest by a peace

8   officer is a Class 6 felony. *Id.* The statute "plainly states that 'a person commits

9   resisting arrest by intentionally preventing or attempting to prevent' an arrest by

10   a police officer if either (A)(1) or (A)(2) is satisfied." *State v. Lee*, 176 P.3d 712

11   (Ariz. App. 2008) (quoting A.R.S. § 13-2508(A)). [T]he language of subsection

12   (A)(1) does not require any particular type of physical conduct so long as that

13   conduct qualifies as "physical force against the peace officer or another." A.R.S.

14   § 13-2508(A)(1). Those who use physical force against police officers attempting

15   to arrest them are not entitled to engage in "minor scuffling," whether it is usual

16   or unusual in the context of an arrest. *See State v. Stroud*, 88 P.3d 190, 194-95

17   (Ariz. App. 2004) (In attempting to flee from an arrest, the defendant was

18   "kicking his feet" and "pushing on [the officer's] arm."), *rev'd on other grounds*,

19   103 P.3d 912 (2005); *State v. Sorkhabi*, 46 P.3d 1071, 1072, ¶ 2 (Ariz. App. 2002)

20   (defendant resisted arrest when he became disruptive at casino, struggled with

21   police when they tried to arrest him for his disruptive behavior, and refused to

22   leave the casino when requested).

23   The fact that Plaintiff was not ultimately charged or convicted of these crimes does

24   not negate probable cause. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *see also*

25   *Blankenhorn v. City of Orange*, 485 F.3d 463, 472-473 (9th Cir. 2006) (officers had

26   probable cause to arrest the plaintiff for trespassing, even though he was ultimately charged

---

[2] "'[P]assive resistance' means a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest." A.R.S. § 13-2508(C).

6

1    with resisting arrest); *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966) ("[W]here
2    probable cause does exist civil rights are not violated by an arrest even though innocence
3    may subsequently be established.").

4          As long as Officer Gillespie had "some reasonable basis to believe [Plaintiff] had
5    committed a crime, the arrest is justified as being [ ] based on probable cause. Probable
6    cause need only exist as to *any* offense that *could be* charged under the circumstances."
7    *Blankenhorn*, 485 F.3d at 473 (citing *Bingham v. City of Manhattan Beach*, 341 F.3d 939,
8    950 (9th Cir. 2003) (citations omitted)) (emphasis added); *see also Peng*, 335 F.3d at 976
9    ("A police officer may make a warrantless arrest when the 'officer has probable cause to
10   believe that the person to be arrested has committed a felony, whether or not a felony, in
11   fact, has been committed.'"); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If
12   an officer has probable cause to believe that an individual has committed even a very minor
13   criminal offense in his presence, he may, without violating the Fourth Amendment, arrest
14   the offender."). Moreover, a reasonable but mistaken belief as to the facts establishing the
15   existence of probable cause could also support probable cause. *See Saucier*, 533 U.S. at 206
16   ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the
17   existence of probable cause . . . and in those situations courts will not hold that they have
18   violated the Constitution.").

19         Because Officer Gillespie had probable cause to arrest Plaintiff for several offenses,
20   Plaintiff's Fourth Amendment unreasonable search and seizure claim fails as a matter of
21   law.

22                  ***iii.  The parking lot of the Circle K store is part of the "premises" for***
23                          ***purposes of trespass.***

24         Here, the Circle K property consisted of the Circle K building, the parking lot, and
25   the gas pumps, which were located in the parking lot. A "No Trespassing Sign" was posted
26   on the outside of the Circle K building. Additionally, the Circle K management had an
27   "Authority to Arrest Trespassers" on file with the City of Phoenix Police Department. The
28

7

"business" of the Circle K included the retail purchase of gas within the parking lot, as well as retail purchases within the building.

Arizona courts have repeatedly deemed the parking lot connected to a storefront as part of the "premises," particularly for purposes of store-owner liability. See *Timmons v. Ross Dress for Less, Inc.*, 324 P.3d 855, 856 (Ariz. App. 2014) (deeming the parking lot to the storefront as part of the "premises" for purposes of liability to the store leaser); *P.B. Bell & Assoc. v. Indus. Comm'n of Arizona*, 690 P.2d 802, 807 (Ariz. App. 1984) ("Thus, if the owner of the building in which the employee works provides a parking lot for the convenience of all of his tenants, or if a shopping center parking lot is used by employees of businesses located in the center, the rule [that the parking lot is considered part of the premises] is applicable…") (citations omitted); *Knoop v. Indus. Comm'n*, 589 P.2d 1325, 1326 (Ariz. App. 1978) (explaining that when an employee injures himself while going to or coming from work when he is on the employer's premises, such "premises" does not include a "public thoroughfare" but does include the employer's parking lot); *Shaner v. Tucson Airport Authority, Inc.*, 573 P.2d 518 (Ariz. App. 1977) (reasoning the airport parking lot was part of the company's "premises").

Thus, here, in considering whether Officer Gillespie had probable cause to arrest Plaintiff by virtue of her presence in the Circle K parking lot, the parking lot is considered part of the Circle K premises for purposes of a determination of whether Plaintiff was, in fact, asked to leave, as required under A.R.S. § 13-1502 (criminal trespass statute).

**b.    Plaintiff's Fourth Amendment Excessive Force Claim**

> ***i. The amount of force Officer Gillespie used was objectively reasonable under the circumstances.***

Excessive force claims are governed by the Fourth Amendment's objective reasonableness standard based on the information the officer possessed when the conduct occurred. *See Saucier*, 533 U.S. at 206. Courts balance the nature and quality of the intrusion against the government interest at stake, the nature and severity of the crime, the imminent

threat of harm to the police or others, and whether the person was actively resisting arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

In determining whether the amount of force an officer used was objectively reasonable, the Ninth Circuit has instructed that officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). This is because the quick and difficult decisions officers make under stress about the amount of force to use should not be second-guessed with hindsight in the courtroom:

> Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the *least* intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second guessing of police decisions made under stress and subject to the exigencies of the moment.

*Id.*; *accord Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.").

### ii.   *Officer Gillespie was performing a community caretaking function.*

The United States Supreme Court has recognized that police officers perform "community caretaking" functions, which are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *See Colorado v. Bertine*, 479 U.S. 367, 381 (1987). The community caretaking function includes actions taken to promote public safety. *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016). Additionally, "officers may detain individuals under their community caretaking function to ensure the safety of the public or the individual." *See Liberti v. City*

1  *of Scottsdale*, No. CV-17-02813-PHX-DLR, 2018 U.S. Dist. LEXIS 154600 (D. Ariz. Sept.

2  11, 2018). Where an officer is performing a community caretaking function, the government

3  interest in using force to subdue a resisting suspect is substantial. *See Ames v. King County,*

4  *Washington*, 846 F.3d 340, 348 (9th Cir. 2017).

5         In *Liberti*, the Court addressed the investigatory detention of a suspect who reached

6  over the counter of a Chompie's restaurant, grabbed the phone, and then called 911. When

7  officers arrived at the scene, the suspect was pacing, admitted to feeling "weird," and

8  swayed close to officers. The suspect ignored two police commands to sit down and, as a

9  result, an officer grabbed his arm to force him to the ground. The suspect then jerked away,

10  briefly grappled with officers, then fled. The Court ruled that "a reasonable jury could only

11  find that the Officers were reasonable in their belief that Liberti's jittery, confused

12  demeanor, complaints of feeling ill, and 911 call indicated that he might have been under

13  the influence of a controlled substance." *Id.* at *8. The Court cited to *Tatum v. City & Cnty.*

14  *of S.F.*, 441 F.3d 1090 (9th Cir. 2006), for the proposition that an officer's observations of

15  a detainee mumbling, disobeying commands and perspiring created "a fair probability he

16  had committed a crime." Not only was there evidence of a crime, but "Officers would have

17  been within their rights as community caretakers to detain Liberti for his own safety." *Id*.

18  The community caretaker function of protection of the public and the suspect also applied

19  to the force used to coerce the suspect into a seated position as the suspect's "refusal to obey

20  police commands, combined with his apparent intoxication, created a government interest

21  in subduing him before he harmed himself or the public." Id. at *11.

22         **c.  Plaintiff's State Law Claims**

23                 ***i.  Plaintiff's gross negligence claim fails because the alleged battery***
24                 ***was an intentional act.***

25         Plaintiff's sole remaining claim is a gross negligence claim against the City of

26  Phoenix, based on a theory of vicarious liability.[3] Plaintiff alleges the City of Phoenix is

27  _____

28  [3] Plaintiff did not sue Officer Gillespie under state law because she failed to timely
    comply with the Notice of Claim statute, A.R.S. § 12-821.01.

1    vicariously liable for Officer Gillespie's willful, wanton, and reckless disregard of Martha

2    Winkler's safety. (Dkt. 12, Count One.) Plaintiff has acknowledged, and Defendants agree,

3    however, that this claim is not viable following the Arizona Supreme Court's August 2018

4    decision in *Ryan v. Napier*. 425 P.3d 230 (Ariz. 2018).

5        *Napier* involved a negligence claim arising out of the intentional release of a police

6    dog and subsequent injuries to a suspect resulting from the "bite and hold." The Arizona

7    Supreme Court analyzed the distinctions between negligence claims and intentional torts,

8    determining, "[t]he fundamental distinction between negligence and an intentional tort is

9    whether the consequences of the act or omission are unintentional or intentional." *Id.* at 235,

10   ¶ 19 (citing *Am. Nat'l Fire Ins. V. Schuss*, 607 A.2d 418, 423 (Conn. 1992)). It concluded

11   "that negligence and intent are mutually exclusive grounds for liability" and held that

12   negligent use of intentionally inflicted force is not a cognizable claim. *Id.* at 236, ¶¶ 20-21.

13       Plaintiff alleges – and Defendants do not disagree – that Officer Gillespie's decision

14   to use force to effect her arrest was intentional. As the basis of Plaintiff's gross negligence

15   claim against the City is vicarious liability, and thus dependent on Officer Gillespie's

16   underlying conduct, that claim is no longer viable.

17            ***ii.   Plaintiff's battery claim against the City of Phoenix fails because she
18                cannot allege vicarious liability against the City for an alleged
                felonious act.***

19       In light of *Napier*, and at the eleventh-hour, Plaintiff seeks to amend her complaint

20   to eliminate her gross negligence claim (against the City of Phoenix only) and replace it

21   with a battery claim against the City of Phoenix. (Dkt. 133.[4]) Although a battery claim – an

22   intentional tort – would have been the more appropriate claim under the circumstances, it,

23   too, fails, because the City of Phoenix cannot be held vicariously liable for what amounts

24   to an intentional, felonious act.

25       Here, Plaintiff asserts that Officer Gillespie was acting within the course and scope

26   of his employment as a City of Phoenix police officer when he arrested Plaintiff. However,

27

28        [4] Defendants will be filing a separate response to Plaintiff's Motion to Amend.

11

Plaintiff's battery claim – unlike her negligence claim – is an intentional tort and, as alleged, a criminal felony. As such, the City of Phoenix is immune from this claim, pursuant to A.R.S. § 12-820.05(B), which provides:

> A public entity **is not liable for losses** that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action. (emphasis added)

*See Napier*, 425 P.3d at 237; *Gallagher v. Tucson Unified Sch. Dist.*, 349 P.3d 228, 231 (Ariz. App. 2015) (The conduct Plaintiff alleges in her complaint is, under Arizona law, an aggravated assault and a felony.)[5] *See* A.R.S. §§ 13-1203 & -1204. There need not be a felony conviction or even a prosecution to render the statute applicable and the public entity not liable for the acts of the employee. *Fernandez v. City of Phoenix*, No. CV 11-02001-PHX FJM, 2012 U.S. Dist. LEXIS 85268, *4 (D. Ariz. 2012); *McGrath v. Scott*, 250 F. Supp. 2d 1218 (D. Ariz. 2003) (A.R.S. §12-820.05(B) applies even if no criminal court previously has found that the public employee(s) committed a felony). As such, the City of Phoenix cannot be held vicariously liable for his conduct, because A.R.S. § 12-820.05 provides immunity.[6]

### iii. Plaintiff's state law claim(s) are not viable because they are based on respondeat superior liability and Plaintiff failed to serve Officer Gillespie with a Notice of Claim.

Plaintiff's vicarious liability claim also fails because Plaintiff failed to serve Officer Gillespie with a Notice of Claim, as required under A.R.S. § 12-821.01. This effectively makes Officer Gillespie "immune" from all state law claims, rendering the City, his

---

[5] This claim, in creating an A.R.S. § 12-820.05 issue, also creates a potential, prejudicial conflict between the City of Phoenix and Officer Gillespie that did not exist before. This issue will be further briefed in Defendants' response to Plaintiff's Motion to Amend.

[6] Plaintiff may argue that Officer Gillespie had a propensity for using excessive force and, thus, A.R.S. § 12-820.05 does not apply. Discovery is closed, however, and there is no evidence to support this argument.

employer, unable to be held vicariously liable for any of Officer Gillespie's alleged tortious acts.

Arizona's notice of claim statute, A.R.S. § 12-821.01(A) requires Plaintiff to file a notice of claim with "person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." The notice must contain "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." A.R.S. § 12-821.01(A). It is mandatory for Plaintiff to comply with this statute. *See Barth v. Cochise County*, 138 P.3d 1186, 1191 (Ariz. 2006); *see also Deer Valley Unified Sch. Dist. v. Houser*, 152 P.3d 490, 493 (Ariz. 2007). Neither actual notice nor substantial compliance excuse failure to comply with the notice of claim statute. *Id.*

There is no question Plaintiff did not file a timely notice of claim as to Officer Gillespie. This failure is fatal to her claim against the City of Phoenix because the failure to comply with the notice of claim statute as to employees also bars all respondeat superior or vicarious liability claims against the employer for the employee's conduct. *Ferreira v. Arpaio*, No. CVI-15-01845-PHX-JAT, 2016 WL 3970224, at *10 (D. Ariz. July 25, 2016) (concluding that where claims against a government employee are dismissed with prejudice due to Plaintiff's failure to comply with the notice of claim statute, the government employer could never be held vicariously liable and must be dismissed as well); *Mulligan v. Grace*, 666 P.2d 1092, 1094 (Ariz. App. 1983) (where county attorney held immune from suit, government defendants could not be held liable on respondeat superior theory since their "liability would depend on the necessary finding of liability on the part of their agent"); *see also M.J. ex rel. Beebe v. United States*, 721 F.3d 1079, 1084 (9th Cir. 2013) (concluding that because police officer was immune from negligence claim, the plaintiff's claims against municipality for officer's alleged negligence fail if those claims are based on the City's vicarious liability; noting that under applicable state law, "[f]or vicarious liability to attach, some sort of underlying liability must be established for which the employer can be held liable"). Thus, because Plaintiff did not serve Officer Gillespie with a notice of claim, and

because her gross negligence claim against the City is one of vicarious liability and not direct liability, Plaintiff's state law claim against the City of Phoenix fails on notice of claim grounds.

> ### iv. Plaintiff's proposed battery claim also fails due to Plaintiff's failure to comply with the notice of claim statute as to Officer Gillespie.

In spite of failing to serve Officer Gillespie with a notice of claim, Plaintiff now, one month before trial, is attempting to allege a battery claim against the City of Phoenix, based on a vicarious liability theory. However, because the vicarious liability of the City of Phoenix is necessarily based upon the liability of its employee (Officer Gillespie), and because the employee cannot be liable because Plaintiff failed to comply with the notice of claim statute, there can be no vicarious liability against the City of Phoenix for Officer Gillespie's alleged acts. In other words, if no claim can be brought against the employee, his liability is extinguished, thereby also extinguishing the vicarious liability of the employer. Accordingly, Plaintiff's battery claim against the City of Phoenix also fails.

> ### d.    Plaintiff cannot recover punitive damages from the City of Phoenix.

Under Arizona law, "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." A.R.S. § 12-820.04. Plaintiff may not obtain punitive damages against the City for her state law claim arising out of Officer Gillespie's alleged conduct.

## II.    EVIDENTIARY ISSUES

### a.    Plaintiff's Police Procedures Expert

> ### i. Plaintiff's police procedures expert should not be permitted to summarize the surveillance footage of the incident.

In his expert report, Plaintiff's police procedures expert, Ronald Kirby, provides a summary of the surveillance footage of the incident in a section entitled, "Video Surveillance Review." Among the assertions Mr. Kirby makes are, "[Plaintiff's manner did not appear aggressive as she walked to [Officer Gillespie]"; "I witnessed no moving traffic in the lot"; as well as a play-by-play of his interpretation of the events captured on video.

1   This summary, which includes time references, is unhelpful and unnecessary. The jury is

2   perfectly capable of reviewing the surveillance footage itself to ascertain what happened

3   and when. Expert testimony is unnecessary. Fed. R. Evid. 702.[7]

4   "[W]hen cases involve review of videotaped events, an expert's opinion should not

5   be permitted when the expert is no better suited than the jury to interpret the video's

6   contents." *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 271 (D.D.C. 2018) (citing *Estate of*

7   *Collins v. Wilburn*, 253 F. Supp. 3d 989, 992 (E.D. Ky. 2017) ("[T]here is little need for

8   Plaintiff's expert to tell the jury whether the officers' actions were objectively reasonable

9   under the circumstances because a video captures the incident."); *Dunlap v. Hood*, 2009

10  U.S. Dist LEXIS 11643, at *1 (N.D. Tex. 2009) ("Because [the expert] is not better suited

11  than the jury to interpret the contents of the video [showing an alleged use of excessive

12  force], his supplemental opinion is not the proper subject of expert testimony.")).

13  Here, as in the cases above, the jury is equally as capable as Mr. Kirby of determining

14  whether the video corroborates or contradicts the parties' assertions. Thus, allowing Mr.

15  Kirby to opine on what the video shows and when will not assist the jury in understanding

16  the evidence or determining a material fact. Mr. Kirby should not be permitted to offer a

17  summary of the surveillance video footage.

18
19  ### ii.  *Plaintiff's Police Procedures expert should not be permitted to testify regarding "pre-tactical matters"*

20  Plaintiff's police procedures expert, Ronald Kirby, has offered opinions regarding

21  "pre-tactical matters," such as whether Officer Gillespie should have "allowed Plaintiff to

22  leave," called for a "backup officer," and he dictates the order that he believes Officer

23  Gillespie should have spoken to the witnesses.

24  Plaintiffs "cannot establish a Fourth Amendment violation based merely on bad

25  tactics that result in a . . .confrontation that could have been avoided." *Sheehan*, 135 S. Ct.

26  at 1777 (internal quotation marks omitted); *George v. Morris*, 736 F.3d 829, 839 n.14 (9th

27
28  [7] Although the witness can use the video to "explain" his opinions, he cannot simply "interpret" the video for the jury.

1    Cir. 2013) (refusing to consider plaintiff's proposed alternative tactics as part of the

2    excessive force inquiry); *Billington v. Smith*, 292 F.3d 1177, 1188 (9th Cir. 2002); *see also*

3    *Smith v. Cnty. of Butte*, No. 2:15-cv-00988-KJM-CMK, 2017 U.S. Dist. LEXIS 65335, at

4    **19-23 (E.D. Cal. Apr. 28, 2017) (finding officers' plan not unreasonable where plaintiffs

5    alleged the tactics, including failure to gather information from family members and choice

6    of K-9 as first-used less-lethal option, were not proper for dealing with a mentally ill

7    individual). The Fourth Amendment allows officers to react to exigencies created by tactical

8    missteps, *Kentucky v. King*, 563 U.S. 452, 462 (2011).

9         For the same reasons set forth in the above cases, Plaintiff should not be permitted

10   to use Mr. Kirby's opinions about Officer Gillespie's investigative tactics to establish a

11   Fourth Amendment violation.

12        **b.    Because Plaintiff's *Monell* claim against the City of Phoenix has been
13              dismissed, Plaintiff should not be permitted to present evidence and/or
               argument regarding the City's internal policies, training, and
14             supervision.**

15        The Court dismissed Plaintiff's *Monell* claim. (Dkt. 91.) As such, Plaintiff cannot

16   attempt to prove her constitutional claim by establishing a purported violation of internal

17   Phoenix Police Department policy and training. Internal police policies and training do not

18   establish the constitutional minimum. Police departments are free to set internal policies

19   and provide training that is more restrictive than the Constitution. *See Whren v. United*

20   *States*, 517 U.S. 806, 815 (1996) (police practices and regulations are an unreliable gauge

21   by which to measure reasonableness of police conduct because they vary from place to place

22   and from time to time); *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (holding that

23   "violation of a police department regulation is insufficient for liability under section 1983"

24   for excessive force); *Thompson v. City of Chicago*, 472 F.3d 444, 454-55 (7th Cir. 2006)

25   (the General Orders were of no consequence to the determination of whether the officer

26   violated the plaintiff's Fourth Amendment rights in apprehending him); *see also Tanberg*

27   *v. Sholtis*, 401 F.3d 1151, 1164-65 (10th Cir. 2005) (holding that similarity of police rules

28   to the applicable objective reasonableness standard would cause jury confusion).

Plaintiff may also attempt to offer expert opinion through her police procedures expert, Ronald Kirby, on Officer Gillespie's compliance with the City's training and policies.[8] These opinions have no relevance now that Plaintiff's *Monell* claim has been dismissed. Permitting Plaintiff to offer such opinions would only confuse the jury, waste time, and serve as a back-door attempt to resuscitate claims that the Court has dismissed. Plaintiff should be prohibited from eliciting testimony, or offering evidence related to any claimed violation of training Officer Gillespie received from the City of Phoenix or the City's internal policies.

### c.      Plaintiff should be precluded from introducing undisclosed evidence.

Defendants propounded written discovery seeking, among other things, Plaintiff's impeachment evidence:

> *City of Phoenix Interrogatory No. 6*:  Identify all impeachment evidence you may utilize at trial, including the name, address, and a description of any and all testimony to be provided by impeachment witnesses at trial, and a list of all impeachment exhibits and the custodian of records for each exhibit.

> *Plaintiff's Response*:  Objection: This request is overly broad, burdensome and unlimited as to time and scope. Plaintiff further objects to the interrogatory because discovery is still in its infancy and Plaintiff has not chosen which exhibits it intends to use. Without waiving said objections, Plaintiff does not have knowledge and is not in possession of any impeachment evidence.

> *City of Phoenix Interrogatory No. 18*: Please identify any statements or admissions you intend to introduce or use at trial under 801(d)(2), Fed. R. Evid., by any City employee or former employee, including the name of the

---

[8] Although not disclosed in his report, Plaintiff's expert cannot opine on legal issues such as the existence of probable cause or whether the force used was "reasonable" or justified. *See U.S. v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (expert opinions in the form of legal opinions not allowed); *see also Monroe v. Griffin*, No. 14-cv-00795-WHO, 2015 U.S. Dist. LEXIS 120125, at *6 (N.D. Cal. Sept. 9, 2015) ("[A]n expert witness cannot give an opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law."); *Brown v. Lewis*, No. 12-14953, 2014 WL 354007, at *5 (E.D. Mich. Jan. 31, 2014) (expert opinions that use of force and detention was unlawful and that probable cause was lacking "invade the province of the jury by explicitly telling members what verdicts to reach."); *Hanig v. Lee*, 2004 WL 6040610, at *1 (D.S.D. Apr. 19, 2004) (same).

person who made the statement, the date/time of the statement, and all persons present when the statement was made.

*Plaintiff's Response*:  Objection: question is improper as it seeks information protected by privilege and work product. Without waiving said objection, Plaintiff intends to use all the statements and admissions made by Officer Gillespie in his police report and interview.

Although Plaintiff was not obligated to disclose impeachment evidence on her own under Rule 26(a)(1), she was obligated to produce it in response to Defendants' specific discovery requests. *See Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001) ("We take this occasion to emphasize what Rule 26(b) makes perfectly clear: the recipient of a properly propounded document request must produce all responsive, non-privileged documents without regard to the recipient's view of how that information might be used at trial. A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence at trial."); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 435-36 (D. Md. 2006) ("A party must disclose impeachment evidence in response to a specific discovery request.") (citing Fed. R. Civ. P. 26(b)(1)).

Thus, impeachment evidence that Plaintiff did not produce or identify in response to the above discovery requests should be excluded at trial. Plaintiff's failure to produce such evidence is neither substantially justified nor harmless, as Defendants cannot properly respond to Plaintiff's evidence where Plaintiff has failed to identify and/or produce it pursuant to Defendants' proper and timely discovery requests. *See* Fed. R. Civ. P. 26(a) and (e); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial.").

Defendants also served written discovery seeking the following as to Plaintiff's experts:

*City of Phoenix Interrogatory No. 15*:  Do you know of any person who is skilled in any particular field of science, including the field of medicine,

18

whom you may call as a witness upon the trial of this action and who has expressed an opinion upon any issue of this action? _____ If so, list all items provided to the expert(s) by you and your attorney, all items and/or facts relied upon by the expert(s) in rendering opinions, each opinion, and the date(s) of any report(s) prepared by the expert(s).

*Plaintiff's Response*: At this time, Plaintiff has not retained any expert witnesses outside the ones disclosed in Plaintiff's 26.1 Disclosure Statement.

Plaintiff never supplemented this response, in spite of identifying several treating providers as "experts." Not only did her "expert" disclosures contain boilerplate descriptions of their anticipated testimony, but nowhere does Plaintiff disclose the bases for the treating providers' testimony or the information that they reviewed in coming to their unknown conclusions. *See also* Defendant's Motion in Limine No. 5 Re: Inadequately Disclosed Treating Physicians (Dkt. 125). As with her failure to disclose information responsive to Interrogatories 6 and 18, Defendants cannot properly respond to the unknown "opinions" of Plaintiff's Rule 26(a)(2)(c) experts without appropriate disclosure.

**d.      Plaintiff cannot causally link her medical bills to the use of force.**

To the extent Plaintiff seeks damages for her medical treatment, she has not disclosed a medical expert to causally link any medical bills to Officer Gillespie's use of force. *See Schudel v. Gen. Elec. Co.*, 35 Fed. Appx. 481, 484 (9th Cir. 2002) (jury cannot resort to speculation or conjecture regarding medical cause of injury); *see also Gilmore v. Lockard*, Case No. 1:12-cv-00925-SAB(PC), 2017 U.S. Dist. LEXIS 20819, at **4-6 (E.D. Cal. Feb. 14, 2017) (precluding Plaintiff from personally testifying regarding a diagnosis, opinions, inferences or causation, and offering any opinions or inferences from any medical records); *Shorter v. Baca*, 101 F. Supp. 3d 87, 900 n.7 (C.D. Cal. 2015) (noting that much of the plaintiff's evidence regarding her diagnosis and need for medical treatment, in the form of her own declaration, would be inadmissible under Rule 702) (citing *Jacobs v. Woodford*, Case No. 1:09-cv-00369-JLT, 2013 U.S. Dist. LEXIS 11988, at *7 (E.D. Cal. Jan. 28, 2013) (precluding plaintiff, who lacks medical expertise, from offering any medical opinion, reporting what any medical professionals told him about his condition, or from testifying

as to any scientific conclusions regarding his medical condition); *see also Calloway v. Hayward*, 1:08-cv-01896-LJO-GSA-PC, 2017 U.S. Dist. LEXIS 9903, at *8 (E.D. Cal. Jan. 24, 2017) (granting motion in limine to preclude plaintiff from offering hearsay medical opinions under Rule 404(b), noting, "Plaintiff is not qualified to render an expert opinion on his medical issues [and] may not testify as to any medical matter which requires scientific, technical, or other specialized knowledge").

Plaintiff's medical records are replete with pre-existing conditions, including diagnoses of hypothyroidism, bipolar disorder, EKG, "anxiety state/disorder unspecified," varicose veins, pain in right shoulder, and an age-related nuclear cataract. She would have required treatment for these conditions regardless of her contact with law enforcement. Moreover, with respect to her shoulder pain and claim of vision issues, Plaintiff has not disclosed an expert to distinguish between Plaintiff's pre- and post- incident symptoms and therefore cannot prove that the pain and vision problems she alleges are not the result of her pre-existing conditions. Plaintiff should not, herself, be permitted to provide the sole testimony as to her diagnoses.

### e.   Voir dire and Closing Arguments

#### i.   *The "Golden Rule" and reptile arguments should be prohibited.*

A "Golden Rule" argument suggests to jurors that they put themselves in the plaintiff's position, and is prohibited because it encourages jurors to decide the case on bias and personal interests rather than on the evidence. *See Puckett v. State*, 918 S.W.2d 701, 711 (Ark. 1996); *Braithwaite v. State*, 572 S.E.2d 612,615 (Ga. 2002). In civil cases, when the "Golden Rule" argument relates to the sensitive area of financial responsibility and asks the jury to consider how much they would wish to receive in the situation, it is prohibited. *See Rosen v. Knaub*, 842 P.2d 1317 (Ariz. App. 1992); *Shaffer v. Ward*, 510 So. 2d 602, 603 (Fla. Dist. Ct. App. 1987).

Similarly, the reptile theory is a vehicle whereby a party raises questions of community protection, in an attempt to spread the aroma of fear in the community. Such

theories are improper as they focus on evidence extrinsic to the case, are intended to set up the jury as a protector of the community, ask the jury to place itself in the plaintiff's position, and set up confusion as to the appropriate standard of care. The Court should not condone arguments that appeal to the prejudice or sympathy of the jury. *See Pracht v. Saga Freight Logistics, LLC*, 2015 WL 6622877 (W.D.N.C. 2015) (granting motion to preclude Golden Rule and/or Reptile Theory questions and argument).

### ii.   Closing arguments must be based on facts in evidence.

Although it is widely understood that attorneys have significant latitude in drawing inferences based upon the evidence admitted in a case, all arguments used in a closing must be based upon facts in evidence. In *Johnson v. United States*, 247 F.2d 803, 805 (D.C. Cir. 1965), the court held: "It is elementary...that counsel may not premise arguments on evidence which has not been admitted." This echoed the holding in *Robinson v. United States*, 32 F.2d 505, 508 (8th Cir. 1928), where the court ordered a new trial after counsel's argument was clearly outside the testimony of the witnesses at trial. Put simply, "counsel has no right to create evidence or misstate the facts." *State v. Thornton*, 498 N.W. 2d 670, 676 (Iowa 1993).

### iii.   References to matters outside evidence in making damages claims are improper.

In closing argument, counsel is permitted to argue reasonable inferences from the evidence. *See State v. Moody*, 94 P.3d 1119, 1159 (Ariz. 2004). The parties are prohibited, however, from arguing facts not in evidence. *Grant v. Ariz. Pub. Serv. Co.*, 652 P.2d 507, 524 (Ariz. 1982). In arguing damages, using monetary figures from nonparties outside the facts of the case is not permitted. In *Colfer v. Ballantyne*, 89 Ariz. 408, 412-13 (1961), the plaintiff's counsel attempted to use examples of a movie star earning $5,000 per night, or racehorses earning $100,000 purses to inflate the damages to be awarded by the jury. The court held these references were not relevant to the plaintiff's damages and did not call upon the jurors to exercise judgment and experience in connection with the ordinary affairs of life in evaluating the facts of the case at hand. *See also Moore v. Missouri Pacific R. Co.*,

21

825 S.W.2d 839 (Mo. 1992) (reversible error to refer to professional athlete salary in closing argument); *Gath v. M/A-Com, Inc.*, 802 N.E.2d 251, 496 (Mass. 2003) (references to damages for airline crashes and baseball players' salaries was "most improper").

Nor is it proper to admit such evidence solely as a set up to arguing the issue in closing. For example, the salary of a Diamondbacks player is irrelevant in an excessive force case involving a plaintiff who was behaving disruptively while trespassing on private property, and serves no purpose other than to allow counsel to argue the matter in closing.

### iv.  *An attorney may not vouch for the credibility of a witness or assert his personal beliefs about the case.*

A party may not vouch for a witness's credibility, or improperly introduce evidence outside the record—such as a lawyer's experience with similar cases—as a means of commenting on the opposing party's case and the credibility of witnesses. *See State v. Forde*, 233 Ariz. 543, 563 (2014) (prosecutor's closing argument, which vouched for the witness's honesty, was improper). Vouching comes in two forms—when the lawyer places the prestige of the government behind a witness by providing personal assurances of the witness's credibility; or suggests that the testimony of a witness is supported by information outside that presented to the jury. *See United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999); *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002); *United States v. Com*bs, 379 F.3d 564, 567–68 (9th Cir. 2004) (holding that it was improper to ask the defendant whether the testifying agent lied and for the prosecutor to make a closing argument in which he several times referred to the defendant calling the agent a liar, and impermissibly referring to the fact that if the agent lied he would have committed perjury and would have been "flush[ing] his ten-year career down the toilet.").

1

DATED this 4th day of March, 2019.

2

WIENEKE LAW GROUP, PLC

3

4

By:     /s/ Kathleen L. Wieneke
          Kathleen L. Wieneke

5
          Christina Retts
          Tara Zoellner

6
          1095 West Rio Salado Parkway, Suite 209

7
          Tempe, Arizona 85281
          *Attorneys for Defendants City of Phoenix and*

8
          *Officer Jason Gillespie*

9
## CERTIFICATE OF SERVICE

10
     I hereby certify that on March 4, 2019, I electronically transmitted the attached

11
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

12
Notice of Electronic Filing to the following CM/ECF registrants:

13
     Jocquese L. Blackwell

14
     Gillmore Bernard
     BLACKWELL LAW OFFICE, PLLC

15
     3101 North Central Avenue, Suite 820
     Phoenix, AZ 85012

16
     jocquese@azjustice.com

17
     gill@azjustice.com
     *Attorneys for Plaintiff*

18

19
     I hereby certify that on this same date, I served the attached document by U.S. Mail,

20
postage prepaid, on the following, who is **not** a registered participant of the CM/ECF

21
System:

22
     N/A

23
                              By:     /s/ Tara B. Zoellner

24

25

26

27

28