# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Winkler,<br><br>                    Plaintiff,<br><br>          v.<br><br>Jason Gillespie,<br><br>                    Defendant. | NO. CV 15-01786-PHX-DLR<br><br>**FINAL PRETRIAL ORDER** |

The Court having reviewed the parties' Joint Proposed Pretrial Order (Doc. 325) hereby adopts the same, as modified[1], as follows:

## A.    TRIAL COUNSEL FOR THE PARTIES

**Plaintiff(s):**

J. Scott Halverson
LAW OFFICES OF J. SCOTT HALVERSON, P.C.
2173 E. Warner Road Suite 101
Tempe, Arizona 85284
Telephone: (480) 777-7776
Facsimile: (602) 357-7444
Email: Scott@halversonfirm.com

**Defendant(s):**

Kathleen L. Wieneke
Christina Retts
Laura Van Buren
Tara B. Zoellner

---

[1] Modifications are limited to Section J, Estimated Length of Trial.

Wieneke Law Group, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85281
Telephone: (602) 715-1868
Facsimile: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com
Email: tzoellner@wienekelawgroup.com
Email: lvanburen@wienekelawgroup.com

**B.      STATEMENT OF JURISDICTION/VENUE**

1.      Jurisdiction in this case is based on a federal question under 42 U.S.C. §§ 1983, 1988.  This Court has jurisdiction over the state law claims pursuant to the doctrine of pendent jurisdiction and 28 U.S.C. § 1367.

2.      Jurisdiction is not disputed by any of the parties.

**C.      STIPULATIONS AND UNDISPUTED FACTS AND LAW**

**1.      The following material facts are admitted by the parties and require no proof:**

a.      Officer Gillespie was acting under color of law as a Phoenix Police Officer at all times relevant to Plaintiff's claims.

b.      The incident occurred within the City of Phoenix at a Circle K located at 7th Street and Bethany Home Road, 5828 N 7th Street.

c.      The property consisted of a building housing the Circle K, gas pumps, and a parking lot.

d.      On July 16, 2014, at or around 6:25 PM, Martha Winkler entered the Circle K located at 7th Street and Bethany Home Road.

e.      The two Circle K clerks who were working that evening included Alex Ford and Leslie Nelson.

f.      At 6:44 PM, and while still at the Circle K, Plaintiff Martha Winkler called the Phoenix Police Department "911" line to request that an officer come to the Circle K on the corner of 7th Street and Bethany Home Road, in Phoenix.

2

g.      Plaintiff claimed that the clerks tried to cheat her out of money by giving her a lottery ticket she did not want.

h.      Over the next 57 minutes, Plaintiff made six (6) more calls to 911, for a total of seven (7) 911 calls.

i.      At 7:08 p.m., a Circle K customer called 911 to report that Plaintiff was "yelling at people passing by," and harassing customers.

j.      At 7:19 p.m., a Circle K clerk called the non-emergency police number to report that the store wanted Plaintiff removed from the property, that she would not stop harassing customers, and that she was trespassing.

k.      Plaintiff was permitted to use the Circle k store phone to speak with an offsite Circle K manager.

l.      Despite the off-site manager's offer to meet with Plaintiff the next day, Plaintiff refused and requested that he come to the store immediately which he refused to do.

m.      Plaintiff was also provided the Circle K customer service number, which was printed on a poster near the front door.

n.      At 7:24 p.m., City of phoenix Police Officer Jason Gillespie, in a marked unit 615H, advised dispatch that he was enroute to the Circle K to respond to the calls.

o.      At 7:41 p.m., Officer Gillespie arrived at the Circle K and parked in front of the store.

p.      While enroute to the store, dispatch informed Officer Gillespie that Plaintiff had made numerous 911 calls.

q.      Officer Gillespie also had access to his CAD which advised of the other calls made regarding this call.

r.      Officer Gillespie had probable cause to arrest Plaintiff for trespassing.

3

s.      Plaintiff has withdrawn any claim for damages for: (1) hearing loss; (2) injury, fractures, dislocations to her nose; (3) eyelid injury and resulting surger(ies); and (4) permanent damage to her eyesight and retinal tear.

**2.      The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:**

The parties are unable to agree on any material facts that will be uncontested.

**3.      The following issues of law are uncontested and stipulated to by the parties:**

a.      Defendant Gillespie acted under color of law.

**D.      CONTESTED ISSUES OF FACT AND LAW**

**1.      The following are the material issues of fact to be tried and decided:**

**Issue #1: As to Plaintiff's Fourth Amendment claim for excessive force, whether Officer Gillespie's conduct was objectively reasonable in light of the facts and circumstances confronting him.**

**Plaintiff Contends:** Defendant Gillespie's use of force was objectively unreasonable because:  (1) the crime was a misdemeanor trespassing offense; (2) Plaintiff did not pose an immediate threat to Defendant; (3) Defendant did not employ any de-escalation tactics; (4) Defendant did not adequately warn Plaintiff before using force; (5) Defendant could have taken more time to assess any need for force and determine what force, if any, would be effective; (6) It was apparent that Plaintiff had a mental health disorder; (7) Plaintiff's reaction to Defendant's conduct should not be considered to be active resistance; (8) Defendant made no effort to temper or limit the amount of force used; (9) Defendant had alternative methods to arrest Plaintiff; (10) and Defendant caused severe injuries to Plaintiff.

**Defendant Contends:** In determining whether the force Officer Gillespie used was reasonable, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In examining these factors, "[t]he

4

'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396–97. The reasonableness inquiry is an objective one: whether the officer's actions were "objectively reasonable" under the circumstances confronting them. *Id*. at 397.

Defendant contends that, given Plaintiff's uncooperativeness, harassing behavior, and failure to vacate the Circle K premises when asked, it was appropriate for Officer Gillespie to place Plaintiff under arrest. Third-party witness Ford described Plaintiff's actions and approach toward Officer Gillespie as aggressive and not something that he would ever do to an officer.  Upon her resistance, his decision to use minimal force to effect the arrest was also appropriate.

**Issue #2: Whether the medical treatment claimed by the Plaintiff (excluding any claim for loss of hearing, nasal injury, eyelid surgery, and damage to eyesight which have been withdrawn), was all reasonable, necessary, and causally connected to the injuries.**

**Plaintiff Contends:** Plaintiff's medical expert and neuroscience expert will testify regarding the extent and cause of Plaintiff's skull fracture, subdural hematoma, and brain bleeding.  Plaintiff's neurologist will testify that Plaintiff's medical treatment was reasonable and necessary to treat her injuries and the bills for this treatment were reasonable.

**Defendant Contends:** Plaintiff's medical records evidence a longstanding history of overtreatment, doctor and/or therapist shopping, failure to comply with physician recommendations, and other failures to mitigate. Defendant's experts Dr. Kahn and Dr. Beckson will address the overtreatment and failure to mitigate, including Plaintiff's pre-

existing history of doctor/therapist shopping when she experiences providers that do not agree with her. For example, Plaintiff has had three independent neuropsychological examinations. The latest examination, performed by Dr. Strebler, failed to connect Plaintiff's claimed symptoms to her injuries alleged. Dr. Strebler believed that Plaintiff's failures in effort on the testing were due to potential Alzheimer's and ordered a PET scan, which was negative. Plaintiff became upset at Dr. Strebler's conclusions, suggested additional testing and stated that the results would adversely affect her claim in this lawsuit. Dr. Strebler's invoice ($3732) and the PET scan cost (Banner Alzheimer's approximately $13525) were not reasonable, necessary, or caused by Plaintiff's injuries. Similarly, Plaintiff seeks to recover medical bills for a visit to St. Joseph's Hospital on May 23, 2015, for $2,007, where she was diagnosed with a urinary tract infection. Her subsequent UTI has nothing to do with the events in this litigation. Ms. Winkler's records also frequently document behavioral issues and abuse of medical providers, leading to the termination of her as a patient. Ms. Winkler also sees multiple providers of the same specialty within the same time frame. For example, she saw Dr. Steven Flitman on May 6, 2025, a neurologist. She saw Dr. Crain, a neurologist, on June 24, 2025. There is no medical reason for Ms. Winkler to see multiple different neurologists for the same complaints. Even Plaintiff's neurologist, Dr. Block, concluded that "the appointment with Dr. Flitman was unrelated to the subject injury, and she'd previously seen several neurologists. I agree with Dr. Crain that an EEG and repeat MRI are not indicated." This was a consultation with 21st Century neurology, which Plaintiff has listed on her medical specials ($229.10). Yet, Plaintiff's neuropsychologist, who is not a neurologist and not qualified to address the reasonableness of neurological care, contradicts Dr. Block and contends that the 21st Century treatment was reasonable (without any foundation to do so).

Plaintiff's experts, although they purport to claim that certain medical care was reasonable and necessary, have no foundation to do so. None of the experts have established that they regularly review billing and understand billing codes. For example, Plaintiff seeks $6629.60 for a one-day evaluation at the Banner University Medical Center

ER on 6-4-15. As part of that bill, Plaintiff was charged $584.00 for an acetaminophen, $487.60 for alcohol blood screening, $1050.00 for drug testing, and $304 for thyroid hormones, which are charges that are unrelated and not reasonable or customary.

**Issue #3: Whether the psychological treatment claimed by the Plaintiff was reasonable, necessary, and causally connected to the injuries suffered.**

**Plaintiff Contends:** Plaintiff's psychological expert will testify that the subject incident aggravated Plaintiff's pre-existing psychological condition and caused PTSD. Plaintiff still suffers from the extensive psychological symptoms caused by the incident, which have devastated Plaintiff's quality of life. The drastic change in Plaintiff's ability to work and to lead an enjoyable life further establish that the incident caused Plaintiff's current psychological disorders and symptoms.

**Defendant Contends:** Defendant has disclosed expert Dr. Beckson, who performed an IME of the Plaintiff to testify regarding her pre-existing diagnoses that were not caused by or worsened by the incident. Plaintiff's 2025 neuropsychological evaluation, by Dr. Strebler, is evidence of intentional lack of effort and/or malingering during testing to bolster Plaintiff's damages in this lawsuit. Plaintiff's effort and/or malingering was so bad, that Dr. Strebler sent Plaintiff for testing to rule out Alzheimer's disease, which a PET scan confirmed she did not have. Dr. Strebler opined that: "her current deficits in verbal memory and semantic fluency impairment suggests left temporal involvement which is unlikely to be related to her right frontal mild complicated TBI in 2021." Plaintiff was dissatisfied with Dr. Strebler's opinions stating: "they are going to destroy us, they are going to annihilate us," making reference to her litigation with PPD. Plaintiff began demanding other testing or modification of Dr. Strebler's opinions: "Ms. Winkler perseverated on asking this writer to word the findings in a certain way in the evaluation report." Other records also document that Plaintiff seems focused on justifying her damages claim and bolstering her lawsuit. *See Gilmore v. Lockard*, 2017 U.S. Dist. LEXIS 20819, at *4-6 (E.D. Cal. Feb. 14, 2017) (precluding Plaintiff from personally testifying regarding a diagnosis, opinions, inferences

or causation, and offering any opinions or inferences from any medical records). In addition, Plaintiff's current treating providers have not reviewed any of her pre-incident records and cannot address causation and have not been disclosed to testify as to causation.

Defendant contends that Plaintiff had an unstable work history before the incident due to her difficulties to get along with others and follow directions.

**Issue #4: Whether Plaintiff's injury pattern is consistent with forward and lateral fall with a right-side bias to the pavement or consistent with an intentional "body slam" to the ground "on her face" multiple times as Plaintiff alleges.**

**Plaintiff Contends:** Plaintiff will not suggest that Defendant punched Plaintiff or slammed her down onto the pavement more than once.

**Defendant Contends:** Plaintiff sustained blunt trauma injury to her forehead, resulting in acute injuries to include a laceration of the right forehead, fracture of the right orbital ridge and roof, and small subdural hematoma. These injuries are the result of a single impact involving the right forehead region onto the pavement. Further, these injuries are consistent with a fall from standing height. The minor injuries to the face, shoulder, and knees are indicative of minor secondary contact to the pavement. The injuries do not support Plaintiff's claim of multiple intentional "body slams" to the ground "on her face" as Plaintiff alleges. Plaintiff has also claimed that she was punched in the head multiple times while on the ground, which is not supported either.

**Issue #5: Whether Plaintiff suffered from a preexisting mental disorder that impacted her employability and failure to mitigate her damages.**

**Plaintiff Contends:** Plaintiff's psychological expert will testify that Plaintiff had a pre-existing bi-polar disorder which made her unusually susceptible to the incident's aggravation of her pre-existing psychological condition and the causation of PTSD and other psychological conditions from which she still suffers.

**Defendant Contends:** During this incident, Plaintiff manifested a sense of entitlement, poor insight and judgment, hostility when she did not get what she thought she deserved, and she misused the 911 system in an effort to target two Circle K clerks who had done nothing wrong. This behavior is documented in other prior incidents with police, care providers, and with employers. Also documented in the records ae long-standing difficulties with depression, anxiety, and coping, as well as recent exacerbations of depression and extreme anxiety, establishing that Ms. Winkler suffered from a long-standing mental disorders prior to her presentation at Circle K on July 16, 2014; that her behavior at the Circle K was the product of her mental disorder(s); and that her mental disorder(s) was (were) the cause of or a substantial contributing factor(s) to the incident that occurred on July 16, 2014. The Circle K incident did not worsen her pre-existing condition, as Ms. Winkler's psychological and behavioral issues in the many months that directly followed the Circle K incident are essentially the same as those that preceded the incident and were evidence during the incident and in the hospital after the incident.

**2.     The following are the issues of law to be determined:**

**Issue #1: Whether there is evidence to support a punitive damages claim.**

**Plaintiff Contends:** The evidence is sufficient upon which a jury may conclude that Defendant Gillespie acted violently out of anger, which implies an evil intent. This is evident from the hasty manner in which he interacted with Plaintiff, his quick resort to aggressive physical force, and his failure to utilize proper police tactics in arresting Plaintiff. Moreover, he abused his authority as a law enforcement officer in a manner which demonstrated his reckless and callous disregard for Plaintiff's constitutional rights. Also, he did not receive any reprimand or disciplinary consequences, so punitive damages are appropriate to deter him and other offices from using excessive force against other individuals in the future.

**Defendant Contends**: Plaintiff is not entitled to punitive damages under federal law because there is no evidence that Officer Gillespie was motivated by an evil mind, or

reckless and callous indifference. *See Smith v. Wade*, 461 U.S. 30, 56 (1983). Nor is there any evidence that deterrence above and beyond that already available through compensatory damages is warranted under the circumstances. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986). Witnesses at the Circle K saw that Plaintiff approached Officer Gillespie first, in an aggressive manner and with her hands raised. The fact that Officer Gillespie was not disciplined has no relevance to punitive damages, particularly as the FBI separately investigated per the Plaintiff's request and found no issues.

**Issue #2: Whether Plaintiff's police procedures expert may testify regarding "pre-tactical matters" such as whether Officer Gillespie should have called for a "backup officer" or supervisor, or waited to place Plaintiff under arrest. Defendants' arguments are more fully set forth in Docs. 294 & 304.**

**Defendant Contends**: This type of evidence improperly permits the Plaintiff to undermine probable cause for arrest and it they type of argument that required a curative instruction in the prior trial. Plaintiffs "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777, 191 L. Ed. 2d 856 (2015) (internal quotation marks omitted). The Fourth Amendment allows officers to react to exigencies created by tactical missteps. *Kentucky v. King*, 563 U.S. 452, 462, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011). As the Ninth Circuit noted the appeal of this case, "'the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' *Graham v. Connor*, 490 U.S. 386, 396 (1989)." *Winkler v. City of Phoenix*, 849 Fed.Appx. 664 (9th Cir. 2021). The Ninth Circuit noted that" the district court had properly determined that the officer had probable cause to arrest Winkler as a matter of law. Yet, Winkler's counsel insisted during his closing argument that the officer should have let her "walk away." A curative instruction was

necessary to correct that improper argument, and to preclude the jury from considering whether the officers decision to arrest Winkler 'provoked plaintiff to resist.'" *Id*. at 666.

"Created the need to use force" is a constitutionally inappropriate factor that, to the extent has been recognized in Ninth Circuit case law, it has not been found to apply to non-deadly force or situations where there was probable cause to arrest. *Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019), involved an investigatory stop where the decedent was shot within five seconds, with no warning, and no clear indication that the suspect was even dealing with an officer. Contrary to *Nehad,* Ms. Winkler knew that officers were responding and repeatedly called the police. She clearly identified Officer Gillespie as an officer, approached him first with her arms raised, and knew that he was going to place her in handcuffs when she arrested. By using any claim of "creation of the need to use force" in the context of a lawful arrest where the officer has the legal right to grab the Plaintiff's wrists to put them into handcuffs, this creates a provocation theory that suggests that Ms. Winkler had the right to resist, which she did not. It is well established that officers have the right to use force or threat of force and/or some form of coercion to place a suspect in handcuffs. *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) also was a shooting that was analyzed under the Fourteenth Amendment substantive due process, where the officer pepper sprayed an individual causing him to react in pain and move the car forward slowly, which resulted in a shooting. As the Ninth Circuit noted in this appeal, the model instruction, 9.27, already includes all of the relevant factors.

As set forth in *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 617 (May 18, 2025), the Supreme Court, citing *Billington v. Smith*, 292 .3d 1177 (9th Cir. 2002) with approval,  held that "a plaintiff cannot 'avoi[d] summary judgment by simply producing an expert's report that the officers conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless."

*Cty. of Los Angeles v. Mendez*, 581 U.S. 420 (May 30, 2017), overruled the Ninth Circuit's provocation rule where a reasonable use of force is found unreasonable if the

officer "intentionally or recklessly provokes a violent confrontation." The provocation rule involved a violation that "create[e] a situation which led to" the use of force.

**Plaintiff Contends**: Such evidence is clearly relevant to the jury's determination regarding whether Defendant's force was excessive.  It is a relevant factor regarding the issue of whether the officer's hasty interaction with Plaintiff (who was mentally ill and emotionally disturbed) created the need to use force by refusing to appease Plaintiff's request for a supervisor or by not summoning a backup officer.  The Ninth Circuit expressly admonished that Plaintiff must not be precluded from offering evidence regarding the "danger-creation" theory or the failure to employ de-escalation tactics (which include slowing down the interaction).  *Winkler v. City of Phoenix*, 849 Fed. Appx. 664, **3-4, 2021 U.S. App. LEXIS 7597, 2021 WL 982276.  This evidence also pertains directly to items #7-9, in the Model Jury Instruction regarding excessive force:

In determining whether the officer[s] used excessive force in this case, consider all of the circumstances known to the officer[s] on the scene, including:

*          *          *

(7)     any effort made by the officer[s] to temper or to limit the amount of force;

(8)     the severity of the security problem at issue;

(9)     the availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]

**Issue #3: Whether the internal PSB investigation of Officer Gillespie's Use of Force is admissible for punitive damages.**

**Defendant Contends:** The existence of a PSB investigation alone, is highly prejudicial to Officer Gillespie as it suggests the potential of wrongdoing and is not relevant to the constitutional standard of care. *See* Fed.R.Evid. 401-403. That the City did not discipline Officer Gillespie is an attempt to back-door irrelevant evidence relating to a dismissed Defendant (the City of Phoenix) into the case. The results of the PSB investigation are completely unrelated to whether Officer Gillespie acted with a culpable

mental state. To the extent that this evidence were to be admitted, Defendant should be permitted to introduce evidence that Plaintiff submitted a complaint to the Federal Bureau of Investigation (FBI), the FBI independently investigated the incident, and the FBI issued a written letter to Ms. Winkler and an email to the City of Phoenix, finding: (1) Ms. Winkler did not comply with Offc. Gillespie's lawful commands; (2) Officer Gillespie then tried to physically arrest her, wherein Ms. Wikler resisted and fell to the ground, striking her head, and sustaining several injuries; (3) the FBI will not be taking any further investigative action;" and (4) the FBI considers this matter closed.

**Plaintiff Contends:** Evidence that Defendant Gillespie received absolutely no adverse consequences regarding this incident is clearly relevant to the issue of punitive damages and the need for deterrence.  If the jury concludes that Defendant used excessive force against a older female who was emotionally disturbed, then they should be able to consider the propriety of punitive damages to address a police officer's shocking abuse of authority and callous indifference toward Plaintiff's constitutional rights.

### Issue #4: Whether Officer Gillespie is entitled to Qualified immunity.

**Defendant Contends:** Officer Gillespie did not violate the Constitution when he reached out to attempt to handcuff Plaintiff.  Her resistance and struggling is what caused her to fall.  The right at issue must be clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Hughes v. Kisela*, 862 F.3d 775, 783 (9th Cir. 2016) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)).  Plaintiff had no clearly established right not to have Officer Gillespie use a control hold to get her into custody

**Plaintiff Contends:** There is ample evidence upon which a jury may determine that Defendant Gillespie used excessive force.  Case law decided prior to the subject incident had clearly established that Defendant's unnecessary and excessive force would violate Plaintiff's Fourth Amendment rights.  This Joint Proposed Pretrial Order is not the proper context in which to brief this issue.  Should the Court be inclined to decide the qualified

immunity issues, Plaintiff requests a full opportunity to submit thorough briefing of these issues.

**Issue #6**: **Whether an alleged violation of internal policy is relevant in establishing a Constitutional violation of the "standard of care."**

**Defendant Contends:** As Plaintiff's Monell claim against the City of Phoenix was dismissed, policies and training are irrelevant to Plaintiff's remaining claims. To permit Plaintiff to prove her constitutional claim by establishing a purported violation of internal Phoenix Police Department policy and training, would be prejudicial, waste time, and confuse the jury. *See* Fed.R. Evid. 403; *Whren v. United States,* 517 U.S. 806, 815 (1996) (police practices and regulations are an unreliable gauge by which to measure reasonableness of police conduct). Moreover, there is no evidence of any violation of internal policies or procedures.

**Plaintiff Contends:** The Ninth Circuit as declared that policies and procedures are relevant to a jury's determination of whether force used was excessive:

> Smith argues that the officers' conduct violated applicable police standards and that there were alternative techniques available for subduing him that presented a lesser threat of death or serious injury. Smith offered an expert declaration on the training of police dogs and police dog handlers. Discussing whether the officers' conduct comported with law enforcement standards, the expert relied upon California's Peace Officer Standards and Training, which are applicable to all state police officers and are a part of Department policy. He concluded that the officers could and should have used control holds to complete the arrest rather than to sic Quando on him once they had him restrained on the ground. See also Hemet Chief of Police, "Use of Force," Gen. Order No. U-102 (discussing "professional presence," "compliance techniques," and other "intermediate force" less likely to cause death or serious injury). A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable. See *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (as amended) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (as amended)

14

(testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received).

*Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir.2005). Additionally, Defendant's failure to follow procedures implies that he acted hastily and without thinking about what conduct would be appropriate. Therefore, the jury must be able to consider whether Defendant violated his Department's policies in its evaluation of Defendant's use of force because this has implications pertaining to various Graham considerations articulated in the Model Jury Instruction regarding excessive force (e.g., failure to de-escalate, failure to warn Plaintiff before using force, failure to take time to assess the need for force and type of force to use, and/or failure to temper or limit the amount of force used).

**Issue #7: Whether Plaintiff may have more than one medical expert to address Plaintiff's medical issues, causation, and reasonableness and necessity of care.**

**Defendant Contends:** Plaintiff has disclosed Dr. Wisco, Ph.D., who is not a medical doctor, to testify regarding causation and Ms. Winkler's injuries, including her psychological and neurological condition. Plaintiff also disclosed a neuropsychologist, Dr. Toma, to address Ms. Winkler's psychological condition. Plaintiff also disclosed a neurologist, Dr. Block, to testify as to Ms. Winkler's neurological condition. Dr. Wisco's opinions are cumulative of Dr. Block and Dr. Toma's opinions.

On January 8, 2026, Plaintiff disclosed an addendum of Dr. Wisco, in which he stated that: "I appreciated the thorough evaluations provided by Dr. Daniel Crain on June 24, 2025, by Dr. Pelin Strebler on August 28, 2025, and by Dr. Gamal Sidarous on October 15, 2025. None of the evaluations contract my initial statement and rebuttal regarding the anatomy and pathology of Ms. Winkler's injuries, but they are clinically more thorough. Thus, I defer to their clinical judgment." He further stated that "I acknowledge that it is not likely that the TBI alone could have caused Ms. Winkler's cognitive and psychiatric sequalea, but it is important to consider the event as contributory to her current neurological state." Dr. Crain and Dr. Strebler are treating providers and have been deposed. Given that

15

Dr. Wisco defers to these providers, he acknowledges that his methodology and review is incomplete and that his opinions would be unhelpful. Dr. Wisco is further unable to state, to a reasonable degree of probability, that Ms. Winkler's injuries were caused by the events at issue, verses potentially contributory. Given the equivocal nature of Dr. Wisco's opinions, lack of reliability under Rule 702, and lack of helpfulness, Dr. Wisco should be excluded as his opinions are also duplicative of Dr. Toma and Dr. Block.

**Plaintiff Contends:** Dr. Wisco will testify regarding general principles of neuroscience and specific observations on Plaintiff's brain imaging which shows the location of damage to Plaintiff's brain.  He also will testify generally regarding the effects of damage to the specific region of the brain where Plaintiff's injury is evident.  By contrast, Dr. Block will testify from a clinical perspective regarding Plaintiff's specific symptoms that are related to her traumatic brain injury and provide opinions that the trauma from the subject incident caused Plaintiff's injuries.   Dr. Block also will testify that Plaintiff's medical treatment was reasonable and necessary to treat Plaintiff's injuries that were caused by the subject incident.  Dr. Toma will address the psychological issues, including opinions regarding the reasonableness and necessity of Plaintiff's psychological treatment and whether the conditions treated were caused/aggravated by the subject incident.  Dr. Toma also will testify regarding the reasonableness of the psychological treatment bills, the need for future treatment, and the estimated cost of such treatment.

**E.    LIST OF WITNESSES**

     **a.    Witnesses who shall be called at trial:**

     **Plaintiff:**

| Martha Winkler [Fact witness] | c/o Attorney J. Scott Halverson | Ms. Winkler is the Plaintiff and will testify about her interaction with both the Circle K clerks as well as Officer Gillespie on the date of the incident. Ms. Winkler will testify about her symptoms as well as her continuing physical and mental pain and suffering as a result of the subject incident. |
|---|---|---|
| **Defendant's Objection:** Ms. Winkler's testimony will be limited by stipulation. (Doc. 313) | | |

16

| Tom Leazotte [Expert witness] | 4980 S. Alma School Rd #2-492 Chandler AZ | Mr. Leazotte is an expert in police procedures and has prepared a report and analysis regarding the reasonableness of the actions of Officer Jason Gillespie. Mr. Leazotte will testify consistent with his reports, and will provide rebuttal testimony to Greg Meyer's testimony. |
|---|---|---|

**Defendant's Objection:** *See* Defendant's separately filed Rule 702 Motion.

| Allan Block [Expert witness] | 9220 E. Mountain View Rd, Suite 213 Scottsdale AZ  85258 | Dr. Block is a licensed physician in the State of Arizona.  His qualifications are fully identified in his Curriculum Vitae. *Dr. Block will opine that the subject incident caused Plaintiff to suffer a traumatic brain injury. He will testify that Plaintiff continues to suffer from ongoing cognitive difficulties due to the head trauma.  Dr. Block will offer his opinions that Plaintiff's medical treatment was reasonable and necessary to treat her injuries caused by the subject incident.  He will provide rebuttal opinions regarding Dr. Kahn's testimony.* Dr. Block will testify consistent with his reports. |
|---|---|---|

**Defendant's Objection:** Defendant objects to any cumulative testimony between Plaintiff's experts.  Dr. Block's testimony cannot duplicate Dr. Toma or Dr. Wisco's testimony.  Defendant objects to any attempt to reference damages withdrawn (hearing, nose/nasal, eye). Defendant objects to testimony regarding "reasonableness and necessity" of pre-existing or unrelated issues, such as thyroid, stomach issues, claims of cancer, UTI.

| John J. Toma, M.D. [Expert witness] | 1577 Gulf Road, 200 PMB Point Roberts WA | Dr. Toma is a licensed psychologist in the State of Arizona.  His qualifications are fully identified in his Curriculum Vitae. *Dr. Toma will opine that that the subject incident aggravated Plaintiff's pre-existing psychological disorder and caused new disorders, including PTSD.* |
|---|---|---|

| | | |
|---|---|---|
| | | *He will provide rebuttal opinions regarding Dr. Beckson's testimony.*<br><br>Dr. Toma will testify consistent with his reports. |

**Defendant's Objection:** Defendant objects to any cumulative testimony between Plaintiff's experts. Dr. Toma's testimony cannot duplicate Dr. Wisco or Dr. Block's testimony. Defendant objects to any attempt to reference damages withdrawn (hearing, nose/nasal, eye). Defendant objects to testimony regarding "reasonableness and necessity" of pre-existing or unrelated issues, such as thyroid, stomach issues, claims of cancer, UTI.

| | | |
|---|---|---|
| Jonathan J. Wisco, Ph.D. [Expert witness] | 5 Aspen Rd Reading MA 01864 | Dr. Wisco is an expert in the field of anatomy and neurobiology. His qualifications are fully identified in his Curriculum Vitae.<br><br>Dr. Wisco will opine that the subject incident caused Plaintiff to suffer acute trauma to her right orbit, ocular damage, brain, TMJ, and neck/ spine. As well as post-concussion syndrome resulting in progression of depression, anxiety, suicidal ideation, and incapacitation for self-care.<br><br>Dr. Wisco will testify consistent with his reports, and will rely on charts, diagrams and studies cited in his report. He will use diagrams and/or demonstrative aids to assist in explaining the dynamics of Plaintiff's injury, including but not limited to MRI films and models of the human skull. He will provide rebuttal testimony. |

**Defendant's Objection:** Defendant objects to any cumulative testimony between Plaintiff's experts. Dr. Wisco's testimony cannot duplicate Dr. Block or Dr. Toma's testimony. Dr. Wisco is not a medical doctor and some areas are outside his qualifications and, in his most recent addendum, he cannot testify to a reasonable degree of medical probability on certain subjects. Defendant objects to any attempt to reference damages withdrawn (hearing, nose/nasal, eye). Defendant objects to testimony regarding "reasonableness and necessity" of pre-existing or unrelated issues, such as thyroid, stomach issues, claims of cancer, UTI.

18

| Officer Jason Gillespie | c/o defense counsel | Defendant will testify regarding the subject incident, his training and experience, and his knowledge of police tactics and policies. |
|---|---|---|
| Custodians of Record as Necessary | | Plaintiff may call any custodians of record necessary to authenticate and lay foundation for records produced in this matter. |

**Defendant:**

| Mace Beckson | c/o Wieneke Law Group, PLC | Dr. Beckson is an expert witness. He is a licensed physician in the states of Arizona, California, Florida and New York and is certified in Psychiatry, Forensic Psychiatry and Addiction Medicine. Dr. Beckson conducted an IPE of Ms. Winkler. His testimony will be consistent with the information contained in his reports produced in this case and any testimony previously given. |
|---|---|---|
| **Plaintiff's Objection:** Plaintiff objects to any cumulative testimony between Defendant's experts and/or Plaintiff's treating providers whom Defendant may call. | | |
| Michael Carhart | c/o Wieneke Law Group, PLC | Dr. Carhart is a Biomechanical expert witness, specializing in the areas of musculoskeletal dynamics, occupant dynamics, human injury tolerance, vehicular rollover, and occupant-to-glazing interaction. Dr. Carhart testimony will be consistent with the information contained in his report and any supplements thereto produced in this case. Dr. Carhart may rely on charts, diagrams and studies cited in his report. He will use diagrams and/or demonstrative aids to assist in explaining the dynamics of Plaintiff's injury including but not limited to radiology films and models of the human skull. Dr. Carhart may also rely on his own body of research, cited in his CV, |

19

| | | to explain his opinions and assist the jury in understanding the science. |
|---|---|---|
| **Plaintiff's Objection:** Plaintiff objects to opinions regarding injuries or other medical topics concerning which this witness is not qualified or competent to testify. Plaintiff also objects to any cumulative testimony between Defendant's biomechanical expert and Defendant's other experts or Plaintiff's treating providers whom Defendant may call. | | |
| Dr. Leo Kahn | c/o Wieneke Law Group, PLC | Dr. Kahn is an expert witness. He is a licensed physician in the state of Arizona. Dr. Kahn is certified by the American Board of Psychiatry and Neurology. Dr. Kahn is a member of the American Academy of Neurology. Dr. Kahn's testimony will be consistent with the information contained in his report and supplemental report. Dr. Kahn will use demonstrative aids and diagrams, including, but not limited to models of the human brain, models of the human skull and radiology films to assist the jury during his testimony. |
| **Plaintiff's Objection:** Plaintiff objects to any cumulative testimony between Defendant's experts and/or Plaintiff's treating providers whom Defendant may call. | | |
| Greg Meyer | c/o Wieneke Law Group, PLC | Captain Meyer is a retired Captain of the Los Angeles Police Department. Captain Meyer is an expert in police procedures. Captain Meyer has prepared a report and analysis regarding the reasonableness of the actions of Phoenix Police Officer Gillespie. Captain Meyer may also comment on and rebut the opinions of Plaintiff's experts. Captain Meyer's opinions are set forth in his report, rebuttal report, and in his prior testimony in this case. |
| Jason Gillespie | c/o Wieneke Law Group, PLC | It is anticipated that Officer Gillespie is expected to testify as to any and all knowledge and information he may have regarding the events of July 16, 2014. Officer Gillespie is expected to testify |

20

| | | |
|---|---|---|
| | | regarding the information he was provided by dispatch prior to arriving at the Circle K, his contacts with the Circle K clerks at the store, and his contacts with Plaintiff Martha Winkler. Officer Gillespie is also expected to testify as to any and all communications he may have had with other witnesses, Plaintiff, and City of Phoenix personnel regarding the incident. |
| **Plaintiff's Objection:** Plaintiff objects to any hearsay statements made by witnesses, Plaintiff, City of Phoenix personnel, or anyone else whom Defendant may attempt to testify about.  Plaintiff also objects to any opinions from this lay witness, including opinions regarding police procedures, proper police tactics (including uses of force), medical opinions, or any other topic for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, *Federal Rules of Civil Procedure*. | | |
| Martha Winkler | c/o Law Offices of J. Scott Halverson, P.C. | Martha Winkler is the Plaintiff in this matter and is expected to testify as to any and all knowledge and information she may have regarding the events of July 16, 2014. Ms. Winkler is expected to testify as to any and all contacts she had with Circle K employees, Officer Gillespie, and investigating detectives regarding the incident. Ms. Winkler is expected to testify as to her behaviors and actions preceding the incident and during the incident. Ms. Winkler is expected to testify as to any and all communications and contacts she may have had with any party, non-party, and/or witness regarding the incident. Ms. Winkler is expected to testify as to her alleged injuries and damages. |
| Alex Ford | c/o Wieneke Law Group, PLC | Mr. Ford at all relevant times was employed by Circle K. Mr. Ford is expected to testify consistent with the statement he gave to Officer Brandon Wright as to any and all knowledge he may have regarding the events of July 16, 2014. Mr. Ford is expected to testify that Martha Winkler came into the Circle K on |

21

| | | |
|---|---|---|
| | | July 16, 2014 and was angry over a lottery ticket. Mr. Ford is expected to testify that Martha Winkler was asked to leave multiple times because she was causing a scene. Mr. Ford is expected to testify that after Officer Gillespie arrived, he observed and heard Martha Winkler yelling and screaming at Officer Gillespie, and that she struggled as Officer Gillespie attempted to place her under arrest. Mr. Ford is expected to testify as to any and all communications he may have had with other witnesses, Plaintiff, and City of Phoenix personnel regarding the incident. |

**Plaintiff's Objection:** Plaintiff objects to any hearsay statements made by witnesses, Plaintiff, City of Phoenix personnel, or anyone else whom Defendant may attempt to testify about.  Plaintiff also objects to any opinions from this lay witness, including opinions medical opinions, or any other topic for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure.

| | | |
|---|---|---|
| Leslie Nelson | c/o Wieneke Law Group, PLC | Leslie Nelson was at all relevant times employed by Circle K. Mr. Nelson is expected to testify consistent with the statement he gave to Officer Adam Branum as to any and all knowledge he may have regarding the events of July 16, 2014. Mr. Nelson is expected to testify that Martha Winkler was very upset and started yelling at him about her purchase of lottery tickets. Mr. Nelson is expected to testify that Martha Winkler then started telling other customers not to shop there because the store was "shady," and that she was asked to leave several times, but she refused, and continued to harass customers inside and outside of the store, where she remained for approximately two hours. Mr. Nelson is expected to testify that Officer Gillespie spoke with the Circle K clerks after he arrived, and then went outside to speak with Martha Winkler. Mr. Nelson is expected to testify that he saw Officer Gillespie place Martha Winkler's |

| | | hands behind her back, but did not see what happened after that. Mr. Nelson is expected to testify as to any and all communications he may have had with other witnesses, Plaintiff, and City of Phoenix personnel regarding the incident. |
|---|---|---|

**Plaintiff's Objection:** Plaintiff objects to any hearsay statements made by witnesses, Plaintiff, City of Phoenix personnel, or anyone else whom Defendant may attempt to testify about. Plaintiff also objects to any opinions from this lay witness, including opinions medical opinions, or any other topic for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure.

### b.     Witnesses who may be called at trial.

### Plaintiff:

| | | |
|---|---|---|
| Kara Fuccello [Fact witness] | 704 W. Mountain Vista Dr Phoenix AZ  85045 | This witness is Plaintiff's daughter and is expected to testify as to any knowledge or information she may have regarding Plaintiff's physical, mental, and emotional conditions before and after the incident. |
| Tricia Merkley, Ph.D. | Barrow Neurological Institute (a/ka Barrow Concussion & Brain Injury Center) 222 W. Thomas Road, Suite 304 Phoenix AZ 85013 | Dr. Merkley performed a neuropsychological evaluation of the Plaintiff. She will testify consistent with her medical records, Plaintiff's test results, the diagnostic conclusions and the basis or support for her conclusions. |
| Dr. Danielle Egan | Barrow Neurological Institute (a/ka Barrow Concussion & Brain Injury Center) 222 W. Thomas Road, Suite 304 Phoenix AZ 85013 | Dr. Eagan performed a neuropsychological evaluation of the Plaintiff. He will testify consistent with his medical records, Plaintiff's test results, the diagnostic conclusions and the  basis or support for her conclusions. |
| Alex Ford | c/o Wieneke Law Group, PLC | Mr. Ford at all relevant times was employed by Circle K. Mr. Ford is expected to testify consistent with the statement he gave to Officer Brandon Wright as to any and all knowledge he may have regarding the events of July 16, 2014. |

23

| Leslie Nelson | c/o Wieneke Law Group, PLC | Mr. Nelson is expected to testify consistent with the statement he gave to Officer Adam Branum as to any and all knowledge he may have regarding the events of July 16, 2014. |
|---|---|---|
| Ian Daniel Crain, M.D. | Banner University Medicine Neurosciences Clinic 755 East McDowell Road Phoenix AZ 85006 | Dr. Crain is expected to testify regarding his diagnosis, prognosis, and treatment of Ms. Winkler as documented in the medical records produced by Plaintiff relating to her treatment with him. Dr. Crain was deposed and is expected to testify consistent with his deposition. |
| Sergeant Tadd Cline | c/o Wieneke Law Group, PLC | Sergeant Cline is expected to testify as to any and all knowledge and information he may have regarding the incident on July 16, 2014 and Phx. PD policies. Sergeant Cline is expected to testify regarding any and all contacts he had with Plaintiff, Officer Gillespie, witnesses to incident and/or City of Phoenix personnel. |
| Lieutenant Brian Freudenthal | c/o Wieneke Law Group, PLC | Lt. Freudenthal is expected to testify regarding his review of Officer Gillespie's use of force related to the subject incident and his findings that Officer Gillespie's use of force was appropriate as documented in COP_000026 - 27. Lt. Freudenthal is expected to testify as to any and all knowledge and information he may have regarding the incident, Martha Winkler's arrest, his use of force review, and the Department's policies and procedures. |

**Defendant's Objection:** Defendant objects to any introduction of any evidence relating to the disciplinary process or lack thereof as not relevant to punitive damages or any other issue in this case.

| Sergeant Chad Austin | c/o Wieneke Law Group, PLC | Sergeant Austin was Officer Gillespie's supervisor and responded to the scene. Sergeant Austin is expected to testify as to any and all knowledge or information he may have of the events of July 16, 2014; use of force; his observation of the scene, training, policies, procedures, his knowledge of the phone, CAD and radio |

24

| | | communications; his communications and interaction with Officer Gillespie, Circle K personnel, other witnesses, Plaintiff, and City of Phoenix personnel regarding the incident. |
|---|---|---|
| **Defendant's Objection:** Defendant objects to any introduction of any evidence relating to the disciplinary process or lack thereof as not relevant to punitive damages or any other issue in this case. | | |
| Detective Nicholas Moseley | c/o Wieneke Law Group, PLC | Detective Moseley is expected to testify as to any and all knowledge and information he may have regarding the events of July 16, 2014, his investigation at the Circle K, his interview and observations of Plaintiff at Phoenix Baptist Hospital. Detective Moseley is expected to testify regarding Phx. PD's policies and procedures. |
| Detective Shelley Kistner | c/o Wieneke Law Group, PLC | Detective Kistner is expected to testify as to any and all knowledge and information she may have regarding the events of July 16, 2014. Detective Kistner is expected to testify regarding her investigation at the Circle K and her participation in the interview of Plaintiff at Phoenix Baptist Hospital, as well as Phx. PD's policies and procedures. |
| Officer Brandon Wright | c/o Wieneke Law Group, PLC | Officer Wright is expected to testify as to any and all knowledge and information he may have regarding the incident on July 16, 2014 and Phx. PD policies. He is expected to testify regarding any and all contacts he had with Plaintiff, Officer Gillespie, witnesses to incident and/or City of Phoenix personnel. |
| Officer Adam Branum | c/o Wieneke Law Group, PLC | Officer Branum is expected to testify as to any and all knowledge and information he may have regarding the incident on July 16, 2014 and Phx. PD policies. He is expected to testify regarding any and all contacts he had with Plaintiff, Officer Gillespie, witnesses to incident and/or City of Phoenix personnel. |

| Mark Staudohar or Kathy Saudohar | Accent Staffing 7150 E. Camelback Road Suite 444 Scottsdale AZ 85251 | Plaintiff will only call one of these two witnesses who will testify regarding Plaintiffs employment at Accent Staffing, including her performance, evaluations, disposition, interactions with co-workers and customers, as well as observations of Plaintiff. |
| Custodians of Records, as necessary | | These witnesses will lay foundation and relevance for medical records and billing statements, as necessary. |

**Defendant:**

| Dr. Pelin Strebler | 755 E. McDowell Rd. Phoenix, Arizona, 86006 602-521-3300 | Dr. Strebler performed a neuropsychological evaluation of the Plaintiff. She was deposed in this case and is expected to testify consistent with her deposition and the records she authored, which were produced by Plaintiff. |
| **Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts and/or Plaintiff's treating providers whom Defendant may call. Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure. | | |
| Ian Daniel Crain, M.D. | Banner University Medicine Neurosciences Clinic 755 East McDowell Road Phoenix AZ 85006 | Dr. Crain is expected to testify regarding his treatment of Ms. Winkler as documented in the medical records produced by Plaintiff relating to her treatment with him. Dr. Crain was deposed and is expected to testify consistent with his deposition. He is further expected to testify regarding his contact with a speech therapist and the Brain Injury Alliance of Arizona, who provided information regarding Ms. Winkler's disruptive behavior. Dr. Crain is further expected to testify regarding his contacts with Banner Speech Therapy and his determination that Mr. Winkler was not a proper candidate for speech therapy, as documented in Plaintiffs' Ex. 102b. He is also expected to testify regarding any of his contact with |

| | | |
|---|---|---|
| | | Plaintiff's treating providers at Lifewell related to his requirement that Ms. Winkler secure mental health treatment before he would continue to treat her. Dr. Crain may testify via deposition designations, which Defendant has identified below. |

**Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts and/or Plaintiff's treating providers whom Defendant may call.
Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure.

| | | |
|---|---|---|
| Joseph Gull, NP | Lifewell Treating Provider 4451 East Oak Street Phoenix, AZ 85008 | NP Gull is expected to testify regarding his treatment of Ms. Winkler as documented in the medical records produced by Plaintiff relating to her treatment with him at Lifewell.   NP Gull is expected to address the information provided by Ms. Winkler, to him, about her functioning as documented in the records. He is further expected to address his observations of Ms. Winkler and her recounting of information, as documented in the records. This includes his observation that Ms. Winkler "expects strong reactions from her audience regarding her trauma and feels frustrated when responses fall short, 'if I heard this it would be a shock and awe response.'" He is expected to testify regarding Ms. Winkler's resistance to any medications and her repeated expressions of dissatisfaction with the mental health system, claims that her prior providers are incompetent, and claims that she has not been helped by prior services. |

**Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts and/or Plaintiff's treating providers whom Defendant may call.
Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure.

| | | |
|---|---|---|
| Sergeant Tadd Cline | c/o Wieneke Law Group, PLC | Sergeant Cline was at all relevant times employed by the City of Phoenix. Sergeant Cline is expected to testify as to any and all knowledge and information he may have regarding the incident on July 16, 2014.  Sergeant Cline is expected to testify regarding any and all contacts he had with Plaintiff, Officer Gillespie, witnesses to incident and/or City of Phoenix personnel.   Sergeant Cline is expected to testify as to any and all email communication he had with Plaintiff, including, the email Bates stamped as COP_000388. Sergeant Cline is expected to testify regarding his contacts with Supervisory Special Agent Anthony Garcia of the Federal Bureau of Investigation regarding the incident. |
| **Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts.  Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure. | | |
| Detective Tim Duffy | c/o Wieneke Law Group, PLC | Detective Duffy at all relevant times was employed by the City of Phoenix Police Department. Detective Duffy is expected to testify as to any and all knowledge he may have regarding the incident on July 16, 2014.  Detective Duffy is expected to testify as to any and all contacts he may have had with Special Agent Drake, the FBI and/or City of Phoenix personnel regarding the events on July 15, 2014. |
| **Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts.  Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure. | | |
| Lieutenant Brian Freudenthal | c/o Wieneke Law Group, PLC | Lt. Freudenthal at all relevant times was employed by the City of Phoenix Police Department.  Lt. Freudenthal is expected to testify regarding his review of Officer |

28

| | | |
|---|---|---|
| | | Gillespie's use of force related to the subject incident and his findings that Officer Gillespie's use of force was appropriate as documented in COP_000026 - 27. Lt. Freudenthal is expected to testify as to any and all knowledge and information he may have regarding the incident, Martha Winkler's arrest and his use of force review. Lt. Freudenthal is expected to testify as to any and all contacts and communications he may have had with witnesses, Plaintiff, Officer Gillespie and/or Phoenix Police personnel regarding the incident. |
| **Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts. Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure. | | |
| Sergeant Chad Austin | c/o Wieneke Law Group, PLC | Sergeant Austin was Officer Gillespie's supervisor and responded to the scene. Sergeant Austin is expected to testify as to any and all knowledge or information he may have of the events of July 16, 2014; use of force; resistance; his observation of the scene, training, his knowledge of the phone, CAD and radio communications; his communications and interaction with Officer Gillespie, Circle K personnel, other witnesses, Plaintiff, and City of Phoenix personnel regarding the incident. |
| **Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts. Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure. | | |
| Daniel Fuccello | 420 W. Roosevelt St. Suite 106 Phoenix, Arizona 85003 | Mr. Fuccello is Ms. Winkler's former son-in-law. He is expected to testify as to Plaintiff's injuries and damages. He is expected to testify regarding his observations of Ms. Winkler before and after the incident. Mr. Fuccello is expected |

| | | |
|---|---|---|
| | | to testify regarding the household services proved to Ms. Winkler. |

**Plaintiff's Objection:** Plaintiff objects to any speculative testimony which lacks foundation.   Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure.

| | | |
|---|---|---|
| Custodians of Record as Necessary | | Defendant may call any custodians of record necessary to authenticate and lay foundation for records produced in this matter. |

    **c.**    **Witnesses who are unlikely to be called at trial.**

    **Plaintiff:**

    None

    **Defendant:**

| | | |
|---|---|---|
| EMS Chad Lancaster | c/o Wieneke Law Group, PLC | Mr. Lancaster was at all relevant times employed by the City of Phoenix Fire Department. Mr. Lancaster is expected to testify as to any and all knowledge and information he may have regarding the incident on July 16, 2014.  Mr. Lancaster is expected to testify as to any and all contacts he had with Plaintiff and City of Phoenix personnel regarding the incident. Mr. Lancaster is expected to lay foundation for the EMS report prepared by him, Bates stamped as COP_000058 – 60. Mr. Lancaster is expected to testify as to any and all observations he made of Plaintiff during his contacts with her. |

**Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts and/or Plaintiff's treating providers.  Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure.

| Detective Nicholas Moseley | c/o Wieneke Law Group, PLC | Detective Moseley was at all relevant times employed by the City of Phoenix Police Department. Detective Moseley is expected to testify as to any and all knowledge and information he may have regarding the events of July 16, 2014. Detective Moseley is expected to testify regarding his investigation at the Circle K and his interview of Plaintiff at Phoenix Baptist Hospital. Detective Moseley is expected to testify as to any and all communications he may have had with witnesses, Plaintiff, and City of Phoenix personnel regarding the incident. |
|---|---|---|
| **Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts. Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure. | | |
| Detective Shelley Kistner | c/o Wieneke Law Group, PLC | Detective Kistner was at all relevant times employed by the City of Phoenix Police Department. Detective Kistner is expected to testify as to any and all knowledge and information she may have regarding the events of July 16, 2014. Detective Kistner is expected to testify regarding her investigation at the Circle K and her participation in the interview of Plaintiff at Phoenix Baptist Hospital. Detective Kistner is expected to testify as to any and all communications she may have had with witnesses, Plaintiff, and City of Phoenix personnel regarding the incident. |
| **Plaintiff's Objection:** Plaintiff objects to any cumulative opinion testimony between Defendant's experts. Plaintiff also objects to any opinions from this witness for which this witness is not qualified or competent to testify about, pursuant to Rules 701, 702, Federal Rules of Civil Procedure. | | |

31

*Witness Acknowledgment*

Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party

F.    **LIST OF EXHIBITS**

1.    **The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:**

**Plaintiff's Exhibits:** 4 Google Map Street view- Circle K; 5- Google Map Street View- Circle K; 6- Google Map Street View- Circle K; 7- Google Map Street View- Circle K; 8- Hand Drawn Diagram; 15- Still Shots From Circle K Video; 33- Radiology Film Excerpts; 34- City of Phoenix ETS records.

**Defendant's Exhibits:** 504- Chu Scene Photos; 505- Aerial of Circle K; 543- Photo of No Trespassing Sign Circle K; 566- Circle K Surveillance Video- Front Door View; 567- Circle K Surveillance Video, Pos A View; 568- Circle K Surveillance Video- Pos B View; 569- Circle K Surveillance Video, Candy View.

2.    **As to the following exhibits, the parties have reached the following stipulations:**

**Plaintiff's Exhibits:** None at this time.

**Defendant's Exhibits:** None at this time.

3.    **As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:**

**Plaintiff's Exhibits:**

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 1. | Incident Report | Hearsay (witness statements), does not redact PII, includes information about criminal charging of the Plaintiff that should be redacted based upon |

32

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| | | stipulation agreed to regarding excluding any criminal case information. Relevance (statements from unknown medical providers, foundation as to medica provider statements). |
| 2. | 911 call log with highlights | Adds information that is not part of the original document; lawyer additions/commentary are not evidence. Addition of new information is confusing as the document includes a Custodian of Records Affidavit, but the highlight and addition of typed words was not included in the original.  This makes it appear that the COR is attesting to the accuracy of the information added after the fact. Defendant has identified this exhibit without any after-the-fact lawyer additions. See Defendant's Exhibit 500. |
| 3. | Use of Force report | No objection |
| 4. | Google Map street view – Circle K | No objection |
| 5. | Google Map street view – Circle K | No objection |
| 6. | Google Map street view – Circle K | No objection |
| 7. | Google Map street view – Circle K | No objection |
| 8. | Hand-drawn diagram | No objection |
| 9. | Circle K surveillance videos | Foundation; authenticity; Rules 401-403 as the videos are not at the speed at which the incident occurred and are unfair and not what was experienced by Officer Gillespie. |
| 10. | Circle K video enhanced – RealTime | Foundation; authenticity. Video when it plays does not appear to be in real time. |
| 11. | Circle K video enhanced – 20 % Zoom / 50% speed | Foundation; authenticity; cumulative; Rules 401-403 as the video is not at the speed at which the incident occurred and |

33

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| | | are unfair and not what was experienced by Officer Gillespie. |
| 12. | Circle K video enhanced – 20 % Zoom / RealTime | Foundation; authenticity; cumulative; Video when it plays does not appear to be in real time. |
| 13. | Circle K video enhanced – 30 % Zoom / 25% speed | Foundation; authenticity; cumulative; Rules 401-403 as the video is not at the speed at which the incident occurred and are unfair and not what was experienced by Officer Gillespie. |
| 14. | Circle K video enhanced – 60 % Zoom / 12% speed | Foundation; authenticity; cumulative; Rules 401-403 as the video is not at the speed at which the incident occurred and are unfair and not what was experienced by Officer Gillespie. |
| 15. | Still shots from Circle K video | No objection |
| 16. | Narrative prepared by Leazotte | Hearsay; See Defendant's Rule 702 to Exclude testimony. Rules 401-403. |
| 17. | Rebuttal prepared by Leazotte | Hearsay; See Defendant's Rule 702 to Exclude testimony. Rules 401-403. |
| 18. | Narrative report by Toma | Hearsay, some of the conclusions originally reached lack foundation or should be modified given later produced records. Rule 702, Rules 401-403. |
| 19. | Rebuttal prepared by Toma | Hearsay. Rule 702, Rules 401-403. |
| 20. | Toma addendum 01 16 2024 | Hearsay. Rule 702, Rules 401-403. |
| 21. | Toma addendum dated Oct 19 2024 | Hearsay. Rule 702, Rules 401-403. Lacks qualifications to comment on medical issues and billing, including neurology. |
| 22. | Toma addendum dated Dec. 1 2025 | Hearsay. Rule 702, Rules 401-403. Lacks qualifications to comment on medical issues and billing, including neurology. Dr. Toma's opinions conflict with Dr. Block's on some of the reasonableness of billed charges. |
| 23. | Wisco narrative | Hearsay. Rule 702, Rules 401-403. This original narrative contains opinions that revised in the addendum narrative. |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 24. | Wisco rebuttal | Hearsay. Rule 702, Rules 401-403. Dr. Wisco is not an MD and not qualified to address or rebut Dr. Kahn's neurological opinions. Dr. Wisco is also not a radiologist. |
| 25. | Wisco addendum 01 08 2026 | Hearsay. Rule 702, Rules 401-403. Dr. Wisco is not an MD. Dr. Wisco's opinions are not cited to a reasonable degree of medical probability and therefore should be excluded. |
| 26. | Block narrative | Hearsay. Rule 702, Rules 401-403, foundation. Includes reference to injuries/damages that have been withdrawn—eye, nasal, hearing (a stipulation was reached to exclude such information). Opinions in this original report are modified in later reports and therefore confusing and unhelpful. |
| 27. | Block rebuttal | Hearsay. Rule 702, Rules 401-403, foundation. Includes reference to injuries/damages that have been withdrawn—eye, nasal, hearing (a stipulation was reached to exclude such information). Opinions in this original report are modified in later reports and therefore confusing and unhelpful. |
| 28. | Block addendum 05 12 2022 | Hearsay. Rule 702, Rules 401-403, foundation. Includes reference to injuries/damages that have been withdrawn—eye, nasal, hearing (a stipulation was reached to exclude such information). Opinions in this original report are modified in later reports and therefore confusing and unhelpful. |
| 29. | Block Addendum 01-31-24 | Hearsay. Rule 702, Rules 401-403, foundation. Includes reference to injuries/damages that have been withdrawn—eye, nasal, hearing (a |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
|  |  | stipulation was reached to exclude such information). Opinions in this original report are modified in later reports and therefore confusing and unhelpful. |
| 30. | Block Addendum 10-14-2024 | Hearsay. Rule 702, Rules 401-403, foundation. Includes reference to injuries/damages that have been withdrawn—eye, nasal, hearing (a stipulation was reached to exclude such information). Opinions in this original report are modified in later reports and therefore confusing and unhelpful. |
| 31. | Block addendum 3-28-25 | Hearsay. Rule 702, Rules 401-403, foundation. Includes reference to injuries/damages that have been withdrawn—eye, nasal, hearing (a stipulation was reached to exclude such information). Opinions in this original report are modified in later reports and therefore confusing and unhelpful. |
| 32. | Block addendum 12-21-25 | Hearsay. Rule 702, Rules 401-403, foundation. Includes reference to injuries/damages that have been withdrawn—eye, nasal, hearing (a stipulation was reached to exclude such information). Opinions in this original report are modified in later reports and therefore confusing and unhelpful. |
| 33. | Radiology film excerpts to be used by Wisco | No objection |
| 34. | City of Phoenix ETS records | No objection |
| 35. | Phoenix Baptist Hospital records | Hearsay, relevance, foundation, refers to nasal and eye injuries that are not at issue per stipulation and should be redacted. Includes causation opinions of treating providers that were not properly disclosed. |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 36. | NextCare Urgent Care records | Non-disclosed records. Hearsay, relevance, prejudice, and foundation as to discussion of the details surrounding the injury.  PII not redacted. Appears to have information redacted. |
| 37. | Camelback Healthcare records | Hearsay, PII not redacted, relevance, prejudice and foundation as to the discussion of incident ("brutally attacked."). Refers to nasal injuries and requests for plastic surgery that relate to pre-existing issue and withdrawn per stipulation. Refers to eye injuries that are withdrawn per stipulation. Includes reference to self-report of injuries by Ms. Winkler that did not occur and are not being claimed (right jaw fracture). Includes injuries not part of this case— cut finger on vase and needed sutures removed; thyroid treatment and hot flashes; cardiac care. |
| 38. | Arizona Retina and Vitreous Consultants records | Hearsay, relevance, foundation, relates to eye injuries that have been withdrawn based upon stipulation. |
| 39. | Phoenix Neuro Assoc records | Hearsay, relevance, foundation, includes reference to injuries that have been withdrawn pursuant to stipulation (eye injury, nasal fracture, hearing loss). Reference to non-existent injuries- jaw. Prejudice as to FBI reference (p. 6, 14). |
| 40. | Insight Imaging records | Hearsay, relevance, foundation, references hearing loss claims that have been withdrawn based upon stipulation. Prejudicial and foundation as related to "violent assault" (p. 3) and handwritten and typed notes (that are from Plaintiff not the medical provider) (p. 4-5). Notes relate to trespassing arrest which is not at issue and other improper content. Notes |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| | | relate to injuries not sustained—jaw fracture. |
| 41. | Family Service Agency records | Hearsay, relevance, cumulative, foundation. Prejudicial as to statements regarding arrest/charging, which are not at issue in this litigation. See Stipulation relating to Motions in Limine. References withdrawn injuries—eye. |
| 42. | Terros records | Hearsay, relevance, cumulative, foundation. Non-disclosure as to causation for any treating provider's conclusions about tie to the injury. Prejudicial as to statements regarding injuries that have been withdrawn (see stipulation). Prejudicial as to reference to FBI. Duplicates of records included in set. Foundation as to Ms. Winkler's recount of events. |
| 43. | Barrow Neurological records | Hearsay, relevance, cumulative, foundation. Non-disclosure as to causation for any treating provider's conclusions about tie to the injury. Prejudicial as to statements regarding injuries that have been withdrawn (see stipulation). |
| 44. | St. Luke Behavioral Health records | Hearsay, relevance, cumulative, foundation. Non-disclosure as to causation for any treating provider's conclusions about tie to the injury. Prejudicial as to statements regarding injuries that have been withdrawn (see stipulation). |
| 45. | HonorHealth 7th Street records | Hearsay, relevance, cumulative. Prejudicial as to statements regarding injuries that have been withdrawn (see stipulation). |
| 46. | St Josephs ER 05 23 2015 records | Hearsay, incomplete, cumulative, relevance as to treatment for medical |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| | | conditions not at issue (UTI, request for cancer screening, h.pylori). |
| 47. | Banner University records | Hearsay, cumulative, foundation, relevance as to treatment for medical conditions not at issue (UTI, cancer of the tongue). Prejudicial and contrary to stipulation to exclude evidence relating to trespassing arrest and charges (p. 13). |
| 48. | Prof Med Transport records | Hearsay, relevance, cumulative, foundation. |
| 49. | Crisis Response Network records | 49-    Collateral source (SMI services), hearsay, foundation, relevance. Prejudicial and contrary to stipulation to exclude evidence relating to trespassing. |
| 50. | SW Network records | Hearsay, foundation, cumulative, relevance. Prejudicial as to statements regarding injuries that have been withdrawn (hearing loss, vision) and trespassing/criminal charges. Duplication of records within exhibit. |
| 51. | Oasis Health records | Hearsay, foundation, cumulative, relevance.  Non-disclosure as to causation opinions. |
| 52. | St Joseph MRI records 06 27 15 | Hearsay, foundation, cumulative. Non-disclosure as to causation opinions. |
| 53. | Connections AZ records | Hearsay, foundation, cumulative. Non-disclosure as to causation opinions. |
| 54. | Maricopa Integrated Health records | Hearsay, foundation, cumulative. Duplicative records within document set. |
| 55. | SW Behavioral records | Hearsay, foundation, cumulative. See Doc. 313, Paragraph 2. Prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss, vision). Prejudicial as to reference to discipline and the FBI. Duplicative of records included in Ex .50. |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 56. | Lifewell records | Hearsay, cumulative, foundation. See Doc. 313, Paragraph 2. Prejudicial as to statements regarding injuries that have been withdrawn (hearing loss, vision). Duplicative records within document. Prejudicial and relevance as to claim that Plaintiff "pressed charges" against the Defendant and reference to appellate history. |
| 57. | Maricopa Integrated Health DOS 11 06 15 | Hearsay, relevance (unrelated lab results) |
| 58. | Phx Neuro & Sleep Medicine records | Hearsay, relevance, cumulative, foundation as to causation opinions. Prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss, vision). |
| 59. | Marquis Diagnostic records | 59-    Hearsay, cumulative. Prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss). |
| 60. | Barrow Brain & Spine records | Hearsay, cumulative. Prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss and vision). |
| 61. | HH Arcadia records | Hearsay, cumulative, prejudicial as to statements regarding injuries that have been withdrawn (hearing loss and vision). |
| 62. | My Doctor Now records | Hearsay, prejudicial and lack of foundation as to false statements that Defendant punched Plaintiff multiple times in the face. Prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss and vision). Foundation as to injury cause. |
| 63. | SimonMed records | Hearsay. Disclosure as to any causation opinions. |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 64. | Banner Neuroscience [Crain] records | Hearsay, prejudicial and relevance as to statements regarding injuries that have been withdrawn (nasal, hearing, vision). Cumulative. Foundation as to cause of injury given contrary deposition testimony. |
| 65. | Recovery Intl records | Hearsay, cumulative. Relevance and prejudicial as to unrelated medical (physical impairments of her legs). Prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss and vision). |
| 66. | Select PT records | Hearsay, prejudicial, relevance, foundation. |
| 67. | ASU Speech & Hearing Clinic | Hearsay, prejudicial, relevance, relates to injuries that have been withdrawn (hearing loss). |
| 68. | SonderMind records | Hearsay, prejudicial and relevance as to statements regarding injuries that have been withdrawn (nasal injuries), trespassing claims, claims of contact with another alleged victim, and contact with Arizona Republic. Duplicative records within data set. See Doc. 313. |
| 69. | 21st Century Neuro records | Hearsay, prejudicial and relevance. Plaintiff's expert, Dr. Block opines that this treatment was not reasonable, necessary, or causally connected to the injury. |
| 70. | Banner University - Strebler records | Hearsay as to summary of other records from other providers. Relevance, foundation, and prejudice as records document that this treatment is not causally connected to the injury. |
| 71. | Banner Alzheimers PET scan records | Hearsay, relevance, foundation, and prejudice as records demonstrate that this treatment is not causally connected to the injury. |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 72. | SELAH records | Hearsay, foundation, cumulative, prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss and vision). See Doc. 313. |
| 73. | Grossman records | Hearsay, relevance, cumulative, foundation and prejudice.  Rules 401-403 as to reference to City of Phoenix, which is not a Defendant, and allegations relating to the City trying to silence her, and other alleged victims of police violence. Duplication within records. Improper reference to prior criminal case and acquittal (p. 11). Content violates Doc. 313. |
| 74. | LifeStance records | Hearsay, relevance, cumulative, foundation. Contents violate Doc. 313 (no knowledge of trespassing). Objection to redaction of "under stress because attorney dropped her for going to the media." prejudicial and relevance as to statements regarding injuries that have been withdrawn (hearing loss and vision). Foundation as to opinions as to cause of injury. |
| 75. | HH Speech Therapy records_Redacted | Hearsay, relevance, cumulative, foundation. No medical support for continued references to "seizure," which come solely from Plaintiff. See Doc. 313. |
| 76. | City Phx ETS bill | Hearsay, relevance, prejudice. Bill for services rendered by City of Phoenix. |
| 77. | Phoenix Baptist Hospital bill | Foundation, hearsay, relevance, prejudice as to charges unrelated to injury (thyroid treatment/medications, pancreatic amylase, protonix, Mylanta, pepto-bismol). |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 78. | NextCare UC bill | Non-disclosed record. Hearsay, foundation, relevance and prejudice as to charges unrelated to injury. |
| 79. | Camelback Health Care bill | Foundation, hearsay, prejudice as to charges unrelated to injury and withdrawn (closed nasal bone fracture, visual disturbance, toe pain, foot pain, back pain, eye injury, hypothyroidism, laceration on finger/removal of sutures, heat intolerance, skin lesion, electectrocardiogram). |
| 80. | AZ Retina billing | Hearsay, relevance, prejudice. Relates to vision loss claim that is withdrawn. |
| 81. | Insight Imaging billing | Hearsay, relevance, prejudice, not causally connected to injury and is connected to overtreatment. |
| 82. | Terros billing | Hearsay, relevance and prejudice as to treatment not causally connected to injury, foundation as to billing codes. |
| 83. | Barrow BNI billing | Hearsay, relevance and prejudice as to treatment not causally connected to injury, foundation as to billing codes, overtreatment. |
| 84. | St. Luke's Hospital bill | Hearsay, foundation, relevance and prejudice as to treatment not causally connected to injury, seeks recovery for pre-existing unrelated medical issues. |
| 85. | HH 7th Street bill | Hearsay, foundation, relevance and prejudice as to treatment not causally connected to injury (GI issues, hypothyroidism, salmonella). |
| 86. | St. Joe Hospital E/R bill | Hearsay, foundation, relevance and prejudice as to treatment for medical conditions not at issue (UTI, request for cancer screening, h.pylori). |
| 87. | Banner University bill | Hearsay, foundation, relevance as to treatment for medical conditions not at issue (UTI, cancer of the tongue, alcohol |

43

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| | | screening, drug screening, lab/urology/hematology). |
| 88. | Prof Med Transport billing | Hearsay, foundation, relevance as to treatment for pre-existing mental health conditions. |
| 89. | SW Network billing | Hearsay, foundation, relevance as to treatment for pre-existing mental health conditions. |
| 90. | Oasis billing | Hearsay, foundation, relevance as to treatment for pre-existing mental health conditions. |
| 91. | St. Joe Hospital MRI bill | Hearsay, relevance and prejudice as to overtreatment/lack of medical necessity. |
| 92. | MIHS - Valleywise Health bill | Hearsay, relevance and prejudice as to treatment for pre-existing medical conditions (levothyroxine, vitamins, thyroid testing), treatment not causally connected to injury but to preexisting mental health conditions. |
| 93. | SW Behavioral – bill | Hearsay, foundation, prejudice relevance as to treatment for pre-existing mental health conditions and efforts to obtain housing. |
| 94. | LifeWell billing | Hearsay, foundation, prejudice and relevance as to treatment for pre-existing mental health conditions |
| 95. | MIHS Billing DOS 11 06 15 | Hearsay, foundation, prejudice and relevance as to treatment for pre-existing mental health conditions |
| 96. | Phx Neuro & Sleep Medicine bill | Hearsay, foundation, not reasonable, necessary, or causally connected to injury. |
| 97. | Barrow Brain & Spine billing | Hearsay, foundation, not reasonable, necessary, or causally connected to injury/overtreatment. |
| 98. | HH Arcadia billing | Hearsay, prejudice and relevance as to treatment for pre-existing medical conditions and general wellness care. |

44

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 99. | My Doctor Now bill | Hearsay, prejudice and relevance as to treatment for pre-existing medical conditions and general wellness care. |
| 100. | SimonMed bill | Hearsay, prejudice and relevance as Plaintiff's expert, Dr. Block, concluded that this MRI was "unrelated" and that Ms. Winkler had previous studies documenting unnecessary duplicative care. |
| 101. | Banner Neuroscience bill | Hearsay, prejudice and relevance as to treatment for pre-existing mental health conditions/treatment necessitated by mental health issues not injury. |
| 102. | RI International bill | Hearsay, prejudice and relevance as to treatment for preexisting mental health conditions. |
| 103. | Select PT bill | Hearsay, prejudice, and relevance as treatment was unsuccessful due to Plaintiff's non-compliance. |
| 104. | ASU Speech & Hearing Clinic bill | Hearsay, relevance, prejudice. Relates to hearing loss claim that is withdrawn. |
| 105. | HH Outpatient Therapy bill | Hearsay, relevance, prejudice, foundation. |
| 106. | 21st Century Neuro billing | Hearsay, relevance, 401-403, no expert causally connects bills to injury. Dr. Block concluded that the treatment was not causally tied to the injury. |
| 107. | Banner University - Strebler billing | Hearsay, relevance, 401-403. Plaintiff's treatment was not reasonable, necessary, or causally connected to the injury. |
| 108. | Banner Alzheimers PET scan billing | Hearsay, relevance, 401-403. Plaintiff's treatment was not reasonable, necessary, or causally connected to the injury. |
| 109. | Grossman billing | Hearsay, prejudice, foundation and relevance as to treatment for preexisting mental health conditions. |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 110. | LifeStance billing | Hearsay, prejudice, foundation and relevance as to treatment for preexisting mental health conditions. |
| 111. | Psych report prepared for Judicial Review | Hearsay, cumulative, 401-403. Non-disclosure as to treating provider. Relevance and prejudice as Plaintiff objected to the COT and contended she should not have been placed under it. |
| 112. | COT Order | Hearsay, cumulative, 401-403. Relevance and prejudice as Plaintiff objected to the COT and contended she should not have been placed under it. |
| 113. | Photograph taken at hospital (shirt) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 114. | Photograph taken at hospital (skirt) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 115. | Photograph taken at hospital (eye) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 116. | Photograph taken at hospital (skull laceration) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 117. | Photograph taken at hospital (face & skull) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 118. | Photograph taken at hospital (knee) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 119. | Photograph taken at hospital (side view face) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
|  |  | court previously permitted only limited photographs to be admitted. |
| 120. | Photograph taken at hospital (shoulder) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 121. | Photograph taken at hospital (face) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 122. | Photograph taken at hospital (full body) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 123. | Photograph taken at hospital (face) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 124. | Photograph taken at hospital (side view face) | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 125. | Photograph taken in ambulance | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 126. | Photograph taken at scene | Foundation, Rule 403 (unduly prejudicial), cumulative, relevance. The court previously permitted only limited photographs to be admitted. |
| 127. | Gillespie PSB report | Hearsay, relevance, unfairly prejudicial. PSB findings relating to other incidents (including failing to appear at court) are not relevant to whether or not Officer Gillespie used excessive force. |
| 128. | Pre-incident photo of Martha Winkler | Improperly titled. Photographs appear to be post-incident photographs of Marti. |

| Exhibit Number | Exhibit Description | Defendant's Objection (if any) |
|---|---|---|
| 129. | Photograph of Martha Winkler | Duplicative of 128. No objection if not duplicated.  Minors faces should be blurred before admission. |
| 130. | Photograph of Martha Winkler | Duplicative of 128. No objection if not duplicated. Minors faces should be blurred before admission. |
| 131. | Photograph of Martha Winkler | Duplicative of 128. No objection if not duplicated. Minors faces should be blurred before admission. |

**Defendant's Exhibits:**

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| 500. | 911 Log | Hearsay, foundation |
| 501. | Calls for Service | Hearsay, foundation |
| 502. | Unit History | Hearsay, foundation |
| 503. | Departmental Report (excerpt) | Hearsay, foundation |
| 504. | Chu Scene Photos | |
| 505. | Aerial of Circle K | |
| 506. | Gillespie Diagram | Hearsay, foundation |
| 507. | Audio - Alex Ford Interview with Sgt. Cline dated June 17, 2014<br><br>This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, foundation |
| 508. | Transcript – Alex Ford Interview with Sgt. Cline dated June 17, 2014<br><br>This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, foundation |
| 509. | Audio- Leslie Nelson Interview with Sgt. Cline dated June 17, 2014 | Hearsay, foundation |

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| | This hearsay statement is listed only for impeachment or refreshing recollection | |
| 510. | Transcript- Leslie Nelson Interview with Sgt. Cline dated June 17, 2014

This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, foundation |
| 511. | Alex Ford Interview dated February 21, 2016

This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, foundation |
| 512. | Alex Ford Interview dated February 18, 2016

This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, foundation |
| 513. | Leslie Nelson interview

This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, foundation |
| 514. | Dr. James Ghee records | Hearsay, foundation, Relevance |
| 515. | Advanced Aesthetics records | Hearsay, foundation |
| 516. | EMS Incident Report | Hearsay, foundation |
| 517. | Mark Whitmire Declaration with exhibits dated May 4, 2017 | Hearsay, foundation, Relevance |
| 518. | Ford Trial Testimony

This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, foundation |
| 519. | Nelson Trial Testimony | Hearsay, foundation |

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| | This hearsay statement is listed only for impeachment or refreshing recollection | |
| 520. | Gillespie Training History | Hearsay, foundation |
| 521. | Lesson Plan- 10596- Use of Force Refresher | Hearsay, foundation |
| 522. | Banner Alzheimers Pet Scan (NEW) | Hearsay, foundation |
| 523. | Dr. Strebler records (NEW) | Hearsay, foundation |
| 524. | Audio - Winkler Interview, Part 1, dated July 16, 2014 COP_000029 | Hearsay, foundation |
| 525. | Transcript - Winkler Interview, Part 1, dated July 16, 2014 COP_000537 – 604 | Hearsay, foundation |
| 526. | Audio - Winkler Interview, Part 2, dated July 16, 2014 COP_000030 | Hearsay, foundation |
| 527. | Transcript - Winkler Interview, Part 2, dated July 16, 2014 COP_000605 – 611 | Hearsay, foundation |
| 528. | Audio - Winkler Interview, Part 3, dated July 16 2014 COP_000031 | Hearsay, foundation |
| 529. | Transcript - Winkler Interview, Part 3, dated July 16, 2014 COP_000612 – 614 | Hearsay, foundation |
| 530. | Phoenix Police Departmental Report DR86-019866 dated February 13, 1986 COP_000063 – 69 | Hearsay, Foundation, Relevance, Rule 403 |
| 531. | Phoenix Police Departmental Report 2004-41103189 dated June 10, 2004 COP_000070 – 77 | Hearsay, Foundation, Relevance, Rule 403 |
| 532. | Field Interrogation dated December 29, 2013 COP_000078 | Hearsay, Foundation, Relevance, Rule 403 |
| 533. | Field Interrogation dated February 14, 2010 COP_000079 | Hearsay, Foundation, Relevance, Rule 403 |

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| 534. | Scottsdale Departmental Report 06-28809 dated November 1, 2006 COP_001197 – 1202 | Hearsay, Foundation, Relevance, Rule 403 |
| 535. | Scottsdale Departmental Report 88-19087 dated October 29, 1988 COP_001203 - 1238 | Hearsay, Foundation, Relevance, Rule 403 |
| 536. | Google Images (Wink_00045) NEW | |
| 537. | Video – Winkler at City Council dated November 17, 2017 (for identification and impeachment only) | Hearsay, Foundation, Relevance, Rule 403 |
| 538. | Transcript – Winkler at City Council dated November 17, 2017 (for identification and impeachment only) | Hearsay, Foundation, Relevance, Rule 403 |
| 539. | Robert Half Subpoena Response (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 540. | City of Phoenix Radio Codes | Foundation, Relevance |
| 541. | Authority to Arrest for Trespass April 24, 2014 (COP_008105 – 8117) | Hearsay, Foundation, Relevance |
| 542. | Fresh Start Records | Hearsay, Foundation, Relevance, Rule 403 |
| 543. | Photo of No Trespassing Sign at Circle K | |
| 544. | Life Stance Records NEW | Hearsay, Foundation |
| 545. | Dr. Crain Records NEW | Hearsay, Foundation |
| 546. | Plaintiff's First Supplemental Response to City of Phoenix's Interrogatories<br><br>This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, Foundation |
| 547. | Barrow Neurological Excerpts 9/10/21 Neuropsychological Consultation | Hearsay, Foundation |
| 548. | Plaintiff's Response to City of Phoenix's Interrogatories | Hearsay, Foundation |

51

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| | This hearsay statement is listed only for impeachment or refreshing recollection | |
| 549. | Winkler eComments NEW | Hearsay, Foundation, Rule 403 |
| 550. | Fire Department Incident History Report COP_000061 - 62 | Hearsay, Foundation |
| 551. | Cvitanovic Body Camera NEW  This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, Foundation, Relevance, Rule 403 |
| 552. | Lutz Body Camera NEW  This hearsay statement is listed only for impeachment or refreshing recollection | Hearsay, Foundation, Relevance, Rule 403 |
| 553. | FBI Email to Tadd Cline regarding Findings | Hearsay, Foundation, Relevance, Rule 403 |
| 554. | FBI Email to Winkler regarding Findings | Hearsay, Foundation, Relevance, Rule 403 |
| 555. | Phoenix Baptist Hospital Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 556. | Maricopa Integrated Health Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 557. | Terros Medical Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 558. | St. Luke's Medical Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 559. | Sonya Lee Medical Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 560. | Arizona Neurological Institute Medical Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 561. | Crisis Response Network Medical Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 562. | Southwest Behavioral Medical Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 563. | Oasis Behavioral Health Medical Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| 564. | Merchant Information Solutions Employment Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 565. | Accent Services Records (excerpt) | Hearsay, Foundation, Relevance, Rule 403 |
| 566. | Circle K Surveillance Video – Front Door View | |
| 567. | Circle K Surveillance Video – POS A View | |
| 568. | Circle K Surveillance Video – POS B View | |
| 569. | Circle K Surveillance Video – Candy View | |
| 570. | Dr. Beckson CV<br><br>For Identification | Hearsay |
| 571. | Dr. Beckson Report<br><br>For Identification | Hearsay |
| 572. | Dr. Beckson IPE Supplemental Report<br><br>For Identification | Hearsay |
| 573. | Dr. Kahn CV<br><br>For Identification | Hearsay |
| 574. | Dr. Kahn Report<br><br>For identification | Hearsay |
| 575. | Dr. Kahn Addendum Report<br><br>For identification | Hearsay |
| 576. | Dr. Kahn Supplemental Report<br><br>For Identification | Hearsay |
| 577. | Greg Meyer CV<br><br>For identification | Hearsay |
| 578. | Meyer Report<br><br>For Identification | Hearsay |

53

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| 579. | Meyer Rebuttal Report<br><br>For Identification | Hearsay |
| 580. | Carhart CV<br><br>For Identification | Hearsay |
| 581. | Carhart Report<br><br>For Identification | Hearsay |
| 582. | Gillespie Report | Hearsay, Foundation |
| 583. | Mosley Report | Hearsay, Foundation |
| 584. | Select PT records | Hearsay, Foundation, Relevance, Rule 403 |
| 585. | Lifewell records | Hearsay, Foundation, Relevance, Rule 403 |
| 586. | 21st Century Neurology<br><br>These hearsay records are listed for impeachment and refreshing recollection | Hearsay, Foundation, Relevance, Rule 403 |
| 587. | St. Josephs Hospital Excerpts 5/23/2015 UTI<br><br>These hearsay records are listed for impeachment and refreshing recollection | Hearsay, Foundation, Relevance, Rule 403 |
| 588. | Banner University Billing<br><br>These hearsay records are listed for impeachment and refreshing recollection | Hearsay, Foundation, Relevance, Rule 403 |
| 589. | Records from 7th Street Family<br><br>These hearsay records are listed for impeachment and refreshing recollection | Hearsay, Foundation, Relevance, Rule 403 |
| 590. | Lifewell Records (81g October to February) | Hearsay, Foundation, Relevance, Rule 403 |

| Exhibit Number | Exhibit Description | Plaintiff's Objection (if any) |
|---|---|---|
| | These hearsay records are listed for impeachment and refreshing recollection | |
| 591. | Carhart Trial PowerPoint Presentation | |
| 592. | Martha Winkler's Reddit Comments | |

*Exhibit Acknowledgement*

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

**G.     DEPOSITIONS TO BE OFFERED**

**Plaintiff**:

Dr. Ian Crain:

| Page:Line | Objections, Counter-Objections |
|---|---|
| 9:21-10:7 | |
| 12:10-17 | |
| 13:20-14:9 | |
| 17:10-18:19 | |
| 21:4-22 | |
| 22:6-24:5 | |
| 24:9-14 | |
| 26:23-27:12 | |
| 30:19-31:4 | |
| 34:11-23 | |
| 41:22-42:8 | |
| 44:4-19 | |
| 46:8-18 | |
| 47:10-25 | |

Dr. Stebler:

| Page:Line | Objections, Counter-Objections |
|---|---|
| 9:2-20 | |
| 11:16-12:1 | |
| 14:6-15:25 | |
| 24:14-25:7 | |
| 30:4-10 | |
| 30:23-31:14 | |

**Defendant**:

Dr. Ian Crain:

55

| Page:Line | Objections, Counter-Objections |
|---|---|
| 5:6-9 | Plaintiff objects to all deposition testimony as Hearsay |
| 6:11-7:4 | |
| 7:18-21 | |
| 7:23-9:6 | |
| 9:13-12:9 | |
| 12:18-13:16 | |
| 13:20-14:9 | |
| 14:15-17:9 | |
| 18:20-19:23 | |
| 20:8-21:3 | |
| 21:23-22:2 | |
| 24:6-9 | |
| 24:15-26:2 | |
| 27:13-30:10 | |
| 31:22-23 | |
| 32:12-33:5 | |
| 33:10-18 | |
| 34:3-10 | |
| 34:24-36:16 | |
| 36:22-37:8 | |
| 37:14-24 | Foundation, Rules 702-703 |
| 38:14-39:7 | |
| 41:6-21 | Relevance, Rule 403, Response to Limine Motion #1 |
| 42:9-43:19 | |
| 44:20-45:1 | |
| 45:11-19 | Relevance, Rule 403, Response to Limine Motion #1 |
| 45:23-46:1 | Relevance, Rule 403, Response to Limine Motion #1 |

Dr. Stebler:

| Page:Line | Objections, Counter-Objections |
|---|---|
| 5:6-9 | Plaintiff objects to all deposition testimony as Hearsay |
| 5:13-16 | |
| 8:13-21 | |
| 9:21-25 | |
| 10:4-11:6 | |
| 12:1-14:5 | |
| 16:1-18:15 | |
| 18:21-20:13 | |
| 21:2-23:12 | |
| 23:16-24:13 | |
| 25:8-27:12 | |
| 29:1-30:3 | |
| 30:15-22 | |
| 31:15-32:3 | |

Plaintiff:

**Trial Day 2 AM**

| Page:Line | Objections, Counter-Objections |
|---|---|
| 236:1-4 | Plaintiff objects to all trial testimony as Hearsay |
| 273:11-25 | |

| Page:Line | Objections, Counter-Objections |
|---|---|
| 274:19-275:4 | |
| 275:22-276:4 | |
| 276:15-280:13 | |
| 280:16-281:8,11 | |
| 281:13-21 | |
| 284:9-18 | |
| 285:3-286:2 | |
| 286:7-11 | |
| 287:3-7 | |
| 288:16-25 | |
| 289:23-24 | Relevance |
| 291:13-24 | Relevance |
| 292:4-19 | |
| 294:5-11 | |
| 294:17-24 | |
| 305:17-22 | Plaintiff objects to all trial testimony as Hearsay |
| 313:18-314:19 | |
| 316:15-317:19 | |
| 317:23-318:10 | |
| 318:24-319:6 | |
| 319:14-20 | |
| 320:15-25 | |
| 321:3,9-322:12 | |
| 322:16-17 | |
| 323:6-11 | |
| 323:21-324:4 | |
| 324:11-325:1 | |

**Trial Day 2 PM**

| Page:Line | Objections, Counter-Objections |
|---|---|
| 331:15-25 | Plaintiff objects to all trial testimony as Hearsay |
| 332:5-25 | |
| 333:4-15 | |
| 334:20-22 | |
| 335:1-6 | |
| 336:8-14 | Hearsay |
| 336:18-338:20 | Hearsay |
| 339:2-340:25 | |
| 341:5-342:13 | Hearsay |
| 343:19-346:22 | Hearsay |
| 347:1-4 | Hearsay |
| 347:13-23 | Hearsay |
| 348:20-349:22 | Hearsay |
| 350:11-351:9 | Hearsay |
| 351:18-352:7 | Hearsay |
| 352:24-353:23 | Hearsay |
| 354:1-355:8 | Hearsay |
| 355:14-21 | |
| 356:1-16 | Hearsay |
| 357:15-358:25 | |
| 359:7-360:7 | Hearsay |

| Page:Line | Objections, Counter-Objections |
|---|---|
| 360:17-361:2 | Hearsay |
| 361:7-363:23 | |

### *Deposition Testimony Acknowledgement*

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed at trial, absent good cause.

**H.   LIST OF PENDING MOTIONS**

**Plaintiff:** Response to Defendant's Motion in Limine regarding prior bad acts evidence.

**Defendant:** Rule 702 Motion to Exclude Plaintiff's Police Procedures Opinions, Docs. 294 and 302. Defendant has filed one Motion in Limine seeking to affirmatively admit information relating to Ms. Winkler's prior contacts with police and economic damages.

**I.   PROCEDURES FOR EXPEDITING TRIAL**

**Plaintiff:** The parties have not stipulated to any procedures for expediting trial.

**Defendant:** The parties intend to use courtroom technology to expedite the presentation of evidence.  Additionally, Defendants request that pursuant to Rule 611, Fed. R. Evid, and in the Court's discretion, they be allowed to exceed the scope of direct examination in the cross examination of witnesses to expediate the presentation of the evidence.

**J.   ESTIMATED LENGTH OF TRIAL**

The Court has scheduled this matter for 7 days and calculates the total time available for trial as 35 hours. The Court will set aside 4 hours for voir dire and instructing the jury. The remaining 31 hours of trial time shall be divided as follows: Plaintiff shall be allotted 16.5 hours, and Defendant shall be allotted 14.4 hours, to present their cases. The Court may reallocate time pursuant to the needs of the trial.

**K.    JURY DEMAND**

Plaintiff requested a trial by jury on all triable issues on July 16, 2015, and Defendants did so on December 4, 2015.  The parties stipulate that these requests were timely and properly made.

**L.    JOINT STATEMENT OF THE CASE**

This is a case brought by Martha Winkler against Phoenix Police Officer Jason Gillespie. Ms. Winkler claims that Officer Gillespie violated federal law by using excessive force when arresting her on July 19, 2014. Ms. Winkler claims that the actions of Officer Gillespie caused her injuries and damages.  Officer Gillespie denies that there was excessive force. Officer Gillespie claims that the use of force was justified and that Ms. Winkler resisted arrest and that any injuries or damages were caused by her own actions.

**M.    CERTIFICATIONS.**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.    All discovery has been completed.

2.    The identity of each witness has been disclosed to opposing counsel.

3.    Each exhibit listed herein: (1) is in existence; and (2) has been disclosed and shown to opposing counsel.

4.    The parties have complied in all respects with the mandates of the Court's Rule 16 Case Management Order and the Order Setting Final Pretrial Conference.

5.    The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

6.    The parties acknowledge that once this Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

DATED this 26th day of May, 2026.

WIENEKE LAW GROUP, PLC

By:   */s/ Christina Retts*
Kathleen L. Wieneke
Christina Retts
Laura Van Buren
Tara Zoellner
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendant Gillespie*

LAW OFFICES OF J. SCOTT HALVERSON, P.C.

By:   */s/ J. Scott Halverson (with permission)*
J. Scott Halverson
2173 E. Warner Road Suite 101
Tempe, Arizona 85284
*Attorney for Plaintiff*

Based on the foregoing,

**IT IS ORDERED** that the Proposed Final Pretrial Order jointly submitted by the parties is hereby **APPROVED** and **ADOPTED**, as modified, as the official Pretrial Order of this Court.

Dated this 12th day of June, 2026.

_____
Douglas L. Rayes
Senior United States District Judge